**Annette M. WILKIE, Respondent,**

v.

**Robert I. ELMORE, Appellant.**

**No. 50914.**

Supreme Court of Missouri,

Division No. 1.

Nov. 8, 1965.

F. William Joyner, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for respondent.

Fain & Rea, Branson, for appellant.

HIGGINS, Commissioner.

Plaintiff, Annette M. Wilkie, sued defendant, Robert I. Elmore, for cancellation of a warranty deed and to have title to the real estate involved quieted in her. Plaintiff's petition was on the theory of nondelivery in Count I and on undue influence in Count II. The court found for plaintiff on Count I and defendant has appealed from the ensuing judgment.

Plaintiff and defendant became acquainted in 1958 when defendant, a real estate agent, handled a sale of real estate near Verona, Missouri, belonging to plaintiff and her husband and the purchase by them of an acreage near Marionville, Missouri. The Wilkies lived on the Marionville acreage until the death of Mr. Wilkie July 6, 1962. During that time there were numerous social and business contacts between the Wilkies and the Elmores. Defendant sold Mr. Wilkie an insurance policy; he rented part of the Wilkie farm one year and solicited men to work it in two other years; he advised with the Wilkies on business matters, and had an exclusive listing of the farm in the event they wished to dispose of it. Defendant also counseled plaintiff on family matters, including sale of a car and arrangements for her husband's funeral. On the way home from making the funeral arrangements, defendant told plaintiff that she should make a list of the things that she would want him to do for her after her own death because she would not be alive "six or eight months from now."

The Elmores continued to make social calls on Mrs. Wilkie for some three months until she moved to Billings, Missouri, to the real estate in question here. Mrs. Wilkie moved to Billings because her Marionville farm had been sold, which sale was accomplished by a realtor other than defendant. About four months after her move, Mrs. Wilkie wrote to defendant at Marionville and requested him to come to her house to discuss some papers she had received concerning a relative. The parties resumed social visits and on such occasions plaintiff's death was discussed, as were things she wanted done after her death, including disposition of her property which she intended to leave to defendant.

In April, 1963, plaintiff went with defendant to a lawyer in Monett, Missouri, where a will was drafted for her. Mrs. Wilkie wanted to and did make defendant the beneficiary of her will. She executed the will on a second trip to Monett. On the trip home, defendant suggested that Mrs. Wilkie could deed the property to him and save probate expenses and inheritance taxes, and that it would not make any difference. Defendant also suggested that Mrs. Wilkie could put her money in bonds and that, by putting his name on her lockbox, he could get her money upon her death. The deed was discussed on other occasions. Upon one such occasion, defendant told her that he had talked to a banker from whom he learned that the way for plaintiff to favor defendant in a dis-

position of her property would be by a deed to him which reserved a life estate to plaintiff. Such a deed was discussed on other occasions in terms of saving money and that "it didn't make a bit of difference * * * wouldn't change my part at all."

On July 8, 1963, defendant drove plaintiff to Springfield, Missouri, where she got her deed from her safety deposit box. They then drove to the courthouse in Ozark, Missouri, and we obtain the subsequent events from plaintiff's testimony:

"Q. Now, what did you do when you got to the court house? A. I told Bob I didn't know anything about that, about changing that deed, putting his name on it, and we come in the court house and went in to the Recorder's Office, she said to go to an attorney upstairs, Mr. Davenport, and we come upstairs and Bob took over from there, that is, he talked with Mr. Davenport, and I did not hear their conversation because I was quite a ways from them, across the room, and his back was to me. He was not facing me, and they fixed— he made the deed and he handed it to me, but I have very bad eyes, I could only read a line or two of anything; and I could read a line of this and I thought well—they had one word in there—Christian County— Lawrence County where it should have been Christian County, and that was right up at the first part of the deed there, and I read those two lines, and glanced over the rest of it, the best I could, but I could not see enough to make it out. I have bad eyes. Q. Was Mr. Davenport your attorney? A. Well, what do you mean by that? Q. Did he usually transact your legal affairs for you? A. Why no. Q. Had you ever gone to him yourself prior to this time? A. No. When my husband was alive he made a deed or something for us when we sold the property, but that's been many years ago.

"THE COURT: You are talking about Mr. Davenport? A. Yes, sir. THE COURT: He made a deed for you and your husband several years ago? A. Several years—quite a few years ago. That's all I know of him. THE COURT: Who paid him on this date? A. This one? I did. THE COURT: All right, go ahead.

"MR. JOYNER: Go ahead. A. Then when we come downstairs to start home, I thought, well I'll take this deed on home with me and read it, I didn't say anything, but I just—

"MR. FAIN: We want to object to this answer as to what she thought about the matter, Your Honor. THE COURT: Well, I am going to overrule it.

"MR. JOYNER: Q. You may proceed. A. And I walked on out without recording it because I wanted to take it home and read it.

"THE COURT: Did you have it in your possession, in your hands, up to that time? A. Yes, sir. THE COURT: All right, go ahead. A. And he called my attention to the fact, he said, 'You'd better have that recorded,' so I went back and had it recorded.

"MR. JOYNER: Q. Now when you went in the Recorder's Office, what did you do with this deed? A. I handed it to the lady that was there. Q. What did she do with that deed? A. Well, she—I don't know what she did, she read it over, she asked if there was any money exchanged, and as far as I know that was about all. Q. Now when was the next time you saw that deed? A. The following week when it was mailed to me. She asked if it was to be mailed to me. Q. What did you tell her? A. I told her yes."

When the deed was mailed to Mrs. Wilkie she kept it and sent for defendant to explain it to her because she thought it was different from her understanding. According to her, defendant became angry while telling her that "it was all right, it didn't make any difference, it did not change anything * * * And I said, 'Well, if nothing is changed then, why can't we go back to Ozark and have this put back like it was?', and that made him angry, so he sorta

laughed and said, 'Well, that's a slick trick,' he said, 'I'm smarter than other people.'"

There were other visits between the parties during which they discussed what defendant should do with Mrs. Wilkie's body in the event of her death. Defendant was given a key to her house so he could get in at any time.

Plaintiff testified that she never intended to give defendant an interest in her property except for his suggestion. She thought he would receive nothing until she died. She said she had an impression that defendant intended for her only to put his name on her old deed, and that he did not explain the consequences of the deed to her. Consideration was expressed in the deed as one dollar and other consideration. Defendant stated that the only consideration was love and affection. The deed was in evidence and it contained the language: "Grantor reserves unto herself her life estate in the above described real estate."

This action in equity is to be reviewed de novo on the record and we are required to make our own findings of fact, draw our own conclusions of law, and enter or direct the entry of the judgment thus indicated, giving due deference to the trial judge on matters of conflicting evidence. Cleary v. Cleary, Mo., 273 S.W.2d 340, 346[10–12]. The court below found that "Plaintiff did not intend to convey to defendant any greater interest in her real estate than she had intended or did convey by her previous will in which defendant was the beneficiary and that the deed introduced in evidence * * * was never delivered by plaintiff to defendant with any intent to convey a present interest in the real estate described therein," and we have used plaintiff's version of the facts as being the evidence most strongly in support of the findings and judgment canceling the deed.

■ Cancellation of a deed is the exercise of the most extraordinary power of a court of equity; such power should not be exercised except in clear cases upon proof which is clear, cogent and convincing, and the burden of such proof is on the party who seeks the cancellation. Cruwell v. Vaughn, Mo., 353 S.W.2d 616, 624[1–4]. On the issue of whether there was a delivery of the deed, the burden of showing nondelivery rests upon plaintiff because she is the one who seeks to invalidate the deed upon that ground. Cleary v. Cleary, supra, 273 S.W.2d l.c. 346[9]; O'Mohundro v. Mattingly, Mo., 353 S.W.2d 786, 792[1].

■ It is not necessary that there be an actual manual delivery of a deed in order to accomplish an effective delivery, Marshall v. Hartzfelt, 98 Mo.App. 178, 71 S.W. 1061, 1062; Hafford v. Smith, Mo. App., 369 S.W.2d 290, 294[3]; and it would be proper for the life tenant to retain the deed which showed her present entitlement and such would not disprove a grant in praesenti of a future interest in the remainder to defendant. Although recording of a deed, even by the grantor, does not in itself operate as a delivery of the deed, such recording as here creates a presumption or a prima facie case of delivery in view of our recording statute, Section 442.390, RS Mo 1959, V.A.M.S., and absent effective rebuttal by plaintiff, her recorded deed transferred title to the remainder interest to defendant upon cessation of plaintiff's retained life estate. Rebmann v. Rebmann, Mo., 384 S.W.2d 663, 665[2]; Weigel v. Wood, 355 Mo. 11, 194 S.W.2d 40, 41[1]. The acceptance necessary to delivery and validation of the deed can be presumed where the transfer of an interest is beneficial to the defendant grantee as in this case. Clark v. Skinner, 334 Mo. 1190, 70 S.W.2d 1094, 1099[12]. The circumstances of this case give rise to an application of the foregoing statements of law relating to delivery. There are also facts such as the plaintiff-grantor giving defendant-grantee a key to the property, improvements made on the property by defendant, the consistency of the deed with the will by which defendant would have inherited the property upon plaintiff's death, the desire to avoid probate and inheritance expenses, the

friendly relation and affection existing between the parties for which plaintiff wished to reward defendant, and the execution and recording of the deed by plaintiff, all of which imply delivery; and plaintiff's statements after the execution and recording of the deed of her impression that she was misinformed or was only intending to put defendant's name on her old deed, and to the effect that she did not intend to deliver a present interest in her land are not sufficient to rebut the evidence of delivery. Carr v. Lincoln, Mo., 293 S. W.2d 396, 401[5–7].

Respondent relies on Dallas v. McNutt, 297 Mo. 535, 249 S.W. 35, which is of no assistance because, in that case, only one of two grantors delivered the deed and there was consequently no effective conveyance. Wheeler v. Rines, Mo., 375 S.W. 2d 48, is not in point because the deed there was clearly testamentary as opposed to the deed of a present interest in real estate. The deed contained a clause: "THIS DEED IS Not To Take Effect till after The Death Of the Said E. W. Harper (grantor)." And in Ridenour v. Duncan, Mo., 291 S.W.2d 900, the gift was properly held incomplete because the deed from a straw man of plaintiff's testatrix was not delivered until after testatrix's death and the purported grantees' names had not been inserted prior to her death.

Accordingly, we find that plaintiff has failed to meet her burden of proving non-delivery of the deed.

■■■■ The trial court found for the defendant on the issue of undue influence and on our review of the record we reach the same result. We may assume that a confidential relation, as defined in Wilhoit v. Fite, Mo., 341 S.W.2d 806, 813[5–6], and Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842, 846[1, 2], cited by defendant, existed between plaintiff and defendant, but proof of a confidential relation without more does not raise an inference of undue influence or fraud or authorize cancellation of a deed. The influence to be undue must be that overpersuasion, coercion, force, or deception which breaks the will of a grantor and puts that person under the will of another, and it must be present and operative at the time of execution of the deed sought to be set aside, Sebree v. Rosen, Mo., 349 S.W.2d 865, 873[9–12], Phelan v. Gockel, Mo., 278 S.W.2d 758, 763[2]; and, notwithstanding a confidential relation between plaintiff and defendant, the defendant had the right to exercise influence so long as it was not so coercive or importunate as to deprive plaintiff of her free agency, Horn v. Owens, Mo., 171 S.W.2d 585, 593[18]. As found by the court below, the evidence previously set out does not rise to the standard necessary to prove undue influence. Even though plaintiff may have made the deed in question at the request of defendant, there is no evidence to show that in so doing she was not exercising her own will as opposed to being under the will of defendant. To the contrary, the evidence shows that despite her age (74 years at the time of execution of the deed), plaintiff was in good health and able to plan in respect to disposition of her property and her own funeral. She showed an alert mind while in the lawyer's office for preparation and execution of the deed by calling attention to the need for changing defendant's address in the deed from Christian County to Lawrence County. She paid both the lawyer and the recorder without any prompting from defendant. Such circumstances are illustrative of the evidence in this case which negatives undue influence.

■■■ In respect to consideration, it is admitted that no money changed hands but, absent some other compelling circumstance, such is not of itself a sufficient reason for setting plaintiff's deed aside because a voluntary conveyance is valid as between the parties. Stoops v. Stoops, Mo., 276 S.W.2d 188, 189[1]. If, in addition to no consideration, there was cogent, convincing evidence that plaintiff had no intention to make a gift transferring the remainder interest in her property to defendant, as in

Cook v. Branine, 341 Mo. 273, 107 S.W.2d 28, and Colquitt v. Lowe, Mo., 184 S.W.2d 420, we would have a different situation; but in this case we have already determined the failure of plaintiff to meet her burden of proving nondelivery of the deed of gift.

Accordingly, the judgment dismissing Count II of plaintiff's petition is affirmed; the judgment for plaintiff and against defendant on Count I of the petition is reversed and the cause is remanded with directions to enter a judgment for defendant on Count I of plaintiff's petition, and to quiet title to subject property in defendant, subject to plaintiff's life estate.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur except HYDE, P. J., who dissents.