**Merlin A. STAAB, Plaintiff-Appellant,**

v.

**Theodore THORESON, Bennett Thoreson and Evelyn Thoreson, Defendants-Respondents.**

No. 10499.

Missouri Court of Appeals, Southern District, En Banc.

March 28, 1979.

Robert P. Baker, Sarcoxie, for plaintiff-appellant.

J. D. Baker, Belisle & Baker, Osceola, for defendants-respondents.

HOGAN, Judge.

Plaintiff Merlin A. Staab declared upon a contract with defendants to: (a) clear the standing timber from 800 acres of defendants' land; (b) clear the scattered timber from 20 acres of the land; (c) construct 4 ponds on the land; and (d) run 1 mile of line fence on defendants' land, "predominantly situated" in St. Clair County. Alleging defendants' promise to pay the sum of $21,500 and to deliver a tractor worth $23,000 as consideration for performance, plaintiff admitted partial payment in the amount of $16,600, but averred breach of the contract by prevention of performance and damages in the amount of $39,610. The action was commenced on September 7, 1973.

Defendants filed an answer and counterclaim. Defendant Evelyn Thoreson denied being a party to the contract alleged in the petition; defendants Theodore and Bennett J. Thoreson denied each and every allegation contained in each and every paragraph of plaintiff's petition. By way of affirmative counterclaim, defendants averred that on December 28, 1972, they contracted with plaintiff to: (a) construct 4 ponds on their land; (b) clear scattered timber from 20 acres of their land; (c) clear the standing timber and brush from 1 mile of line fence; and (d) clear the standing timber and brush from "some 800" acres of land owned by

defendants. In consideration of plaintiff's service, defendants agreed to pay plaintiff the sum of $21,500 and to deliver one "International Harvester Company TD 20B" of an agreed value of $10,500. Thereafter, defendants alleged, plaintiff began clearing the land and continued to do so intermittently until May 30, 1973. On June 15, 1973, so defendants alleged, the parties entered into a "supplemental" agreement "amending and superseding" the original agreement. The second contract called for plaintiff to: (a) clear all timber from defendants' 867-acre tract; (b) pile all the felled timber into manageable windrows so it could be burned; (c) clear the timber and brush from 1 mile of line fence; and (d) clear the scattered timber on 20 acres of defendants' land. Defendants averred that the consideration to be paid for plaintiff's services was $22,980 and delivery of a tractor of the agreed value of $10,500. Defendants further pleaded partial payment in the amount of $16,600, breach of the contract by plaintiff, and averred consequential damages in the amount of $35,804. Plaintiff filed a detailed reply, denying, among other things, the existence of any "supplemental" or "superseding" contract. By November 3, 1973, the cause was at issue.

On May 31, 1974, defendants applied for a change of judge pursuant to Rule 51.05, V.A.M.R.,[1] and a special judge was assigned to hear the case. The cause was thereafter set for trial by jury on June 11, 1975. The parties appeared. Plaintiff moved the court for a continuance; defendants moved to amend their counterclaim. Both motions were granted and the cause was set over for trial on December 19 and 20, 1975. On December 10, plaintiff filed another application for a continuance, and on December 16, mailed a notice of dismissal without prejudice to the clerk of the trial court. On December 19, defendants appeared with counsel. Neither the plaintiff nor his counsel appeared. The trial judge noted plaintiff's dismissal without prejudice, and asked defendants if they were ready to proceed. Defendants announced ready and presented proof of their claim, including damages, by four witnesses. At the close of the trial, the court made the following docket entry: "Motion for continuance overruled. Plaintiff files dismissal without prejudice. Defendants announce ready for trial on counterclaim. Trial by Court. Judgment for Defendants and against the plaintiff for $38,126.75 as per formal decree filed herewith.

■ A formal judgment was prepared and filed as of the date of rendition, which, contrary to plaintiff's assertion, was entirely proper procedure. *Sears v. Norman*, 543 S.W.2d 300, 304[7] (Mo.App.1976). On January 15, 1976, 27 days after the judgment was rendered, plaintiff filed a pleading styled "Motion to Set Aside Judgment" and on January 23, he appealed to this court. After the transcript on appeal was filed, it was routinely examined and thereafter, the court's attention was called to the want of a ruling on plaintiff's after-trial motion.

The motion, sworn to by counsel, is very long; some of the allegations are appropriate to a motion for new trial, but inasmuch as it was filed well after the 15-day period prescribed by Rule 78.02 and there is no allegation that plaintiff was not timely notified of the entry of judgment as required by Rule 74.78, plaintiff's motion was not regarded as a motion for new trial. The motion does allege that 13 days prior to the date of trial, plaintiff's counsel was advised that defendants would try the case to the court. Counsel agreed, but wrote the special judge that plaintiff would need more time and would ask for a continuance when the case was called on December 19. Plaintiff's counsel so advised defendants' attorneys. A written motion for continuance was prepared and sent to the clerk of the circuit court. Four days prior to trial, the defendants' attorneys advised plaintiff's counsel they would insist on going to trial. Plaintiff's attorney thereupon complained to the trial court. The trial court advised plaintiff's counsel that plaintiff had no alternative except to dismiss the cause without prejudice and refile the action. The

1. All references to rules are to Missouri Rules of Court, 9th Edition, 1978, V.A.M.R.

trial court said "Ray (defendants' attorney) says he will dismiss if you do." Nevertheless, plaintiff's attorney was advised by telephone—the day before trial—that defendants' attorneys had meant they would dismiss the counterclaim with prejudice but would not be willing to dismiss without prejudice. Plaintiff's counsel was advised by the trial judge that he "didn't know" if defendants would appear and ask for judgment on their counterclaim.

The allegations just recited suggested to this court that plaintiff's after-trial motion should be regarded as a motion for equitable relief. The equitable grounds for relief from a default judgment have never been very clearly defined, but it is generally recognized that a party who fails to appear may set up mistake, excusable negligence, surprise or accident as grounds for equitable relief, and he may do so by after-trial motion. *J. R. Watkins Company v. Hubbard,* 343 S.W.2d 189 (Mo.App.1961); Comment, Procedure—Setting Aside Final Judgments in Missouri, 28 Mo.L.Rev. 281, 299–305 (1963), and see generally Restatement, Judgments § 120 and comments, pp. 584–585 (1942).[2] It was therefore decided that the appeal was premature and should be dismissed, for whatever the precise nature of the plaintiff's after-trial motion, *proof* of the allegations was necessary. *Reger v. Reger,* 316 Mo. 1310, 1327, 293 S.W. 414, 421[5] (1927); *Coleman v. Coleman,* 277 S.W.2d 866, 869[2] (Mo.App.1955). Cf. *State ex rel. County of Mississippi v. Stallings,* 434 S.W.2d 588, 591–592[5, 6] (Mo. 1968). Motions and other pleadings do not prove themselves. Proof is required and the burden of proof rests upon the party filing the motion. *Williams v. Williams,* 497 S.W.2d 415, 417[2] (Mo.App.1973), and see *Hamilton v. Linn,* 355 Mo. 1178, 1181, 200 S.W.2d 69, 71[7] (1947). So, with a timely motion pending before the trial court, there was no "final and appealable" judgment, for with certain exceptions not applicable to this case, a judgment is not "final and appealable" until the trial court has exhausted its jurisdiction and the issues decided are beyond its control. *Pendleton v. Pendleton,* 532 S.W.2d 905, 906[2] (Mo. App.1976); *State ex rel. Mary Frances Realty Co. v. Homer,* 150 Mo.App. 325, 330, 130 S.W. 510, 512[5] (1910), and see *State ex rel. Chicago B. & Q. R. Co.,* 189 Mo. 197, 216, 88 S.W. 28, 34 (1905); *Wolff v. Vette,* 17 Mo. App. 36, 37 (1885). Further, it was clear that the plaintiff was obliged to pursue his appeal from the "default" judgment or to present evidence in support of his after-trial motion and then appeal, one or the other. He could not, as the expression runs, "blow hot *and* cold" in this court. The terms "waiver," "abandonment" and "estoppel" are used rather loosely to describe this sort of inconsistency but there is considerable authority in support of the proposition that a party against whom a judgment has been rendered and who brings another action upon the judgment which is clearly inconsistent with the right of appeal is estopped to appeal. *Sharp v. Interstate Motor Freight Systems,* 442 S.W.2d 939, 946[8] (Mo.banc 1969); *Sansone v. American Mut. Indemnity Assn. of Missouri,* 20 S.W.2d 293 (Mo.App.1929); *Sullivan v. Cloud,* 62 Ohio App. 462, 24 N.E.2d 625, 626[3] (1939); Annot. 115 A.L.R. 121 (1938). Plaintiff could regard the judgment complained of as valid but erroneous, or as a void judgment subject to vacation because it was procured by some species of equitable fraud. He could not claim it was both valid and void. With these considerations in mind, the first appeal was dismissed in a short per curiam opinion. *Staab v. Thoreson,* 536 S.W.2d 537 (Mo.App.1976).

Thereafter defendants, having obtained new counsel, gave notice to the plaintiff that they would call up the "Motion to Set Aside Judgment" on Friday, September 24, 1976. There is no contention that this notice was not received by counsel. The supplemental transcript filed here reflects that the cause was duly called, that defendants appeared by their counsel, but neither

---

2. This is not to say that much the same relief may not be sought in a motion for new trial. It may, but the granting of such relief is discretionary with the trial court. *Hamm v. Hamm,* 437 S.W.2d 449, 453–454 (Mo.App.1969).

plaintiff nor his counsel appeared. The motion was denied, and the amount of an appeal bond was fixed. Thereafter plaintiff again appealed, again from the judgment of December 19, 1975.

■■■ On this appeal, one or two preliminary observations seem appropriate. First, we should make it clear that we regard the judgment of December 19, 1975, as a final, appealable judgment. When the plaintiff voluntarily dismissed his petition, the parties in effect exchanged positions. The defendants became plaintiffs, and the plaintiff became defendant; defendants' counterclaim became the first pleading. Rule 67.05, V.A.M.R.; *Clark Real Estate Co. v. Old Trails Inv. Co.*, 335 Mo. 1237, 1246, 76 S.W.2d 388, 393 (1934); *Zorensky v. Wellston Clothing Co.*, 223 S.W.2d 851, 854[2] (Mo.App.1949). There is no contention, nor could there be upon this record, that the plaintiff was not "personally served" with a copy of the defendants' answer and counterclaim; Rule 43.01(b) provides that service of a pleading on a party represented by an attorney of record shall be made upon the attorney unless the court otherwise orders. It is admitted that trial without a jury was agreed to; in bench-tried cases, the court itself is the ultimate trier of fact, whether or not an advisory jury is empaneled. Rule 73.01(1)(a) and (b); *Buford v. Moore*, 177 S.W. 865, 868–869[2] (Mo.1915); *Labor Discount Ct. v. State B. & T. Co.*, 526 S.W.2d 407, 420–421[4, 5] (Mo.App.1975). A judgment entered against a defendant by a court upon consideration of evidence offered under pleadings filed by the parties is a judgment on the merits, even though neither defendant nor his lawyer appear at the trial. *Hamm v. Hamm*, supra, n. 1, 437 S.W.2d at 452; *State ex rel. Jones v. Reagan*, 382 S.W.2d 426, 430[5][6] (Mo.App.1964). It is true that plaintiff's voluntary dismissal of his petition did not amount to a confession of judgment; defendants' damages remained a matter of proof, *Fawkes v. National Refining Co.*, 341 Mo. 630, 636–637, 108 S.W.2d 7, 9–10[1, 2][3, 4] (1937), but here the plaintiff had notice that the case would be called on December 19, and by the express language of the second sentence of

Rule 74.10, the trial court was authorized to assess defendants' damages and enter a final judgment. Because the trial court entered judgment against the plaintiff in the amount of $38,126.75, and the judgment is final, we are in no doubt he is entitled to appeal. § 512.020, RSMo (1969), V.A.M.S.

Further, it should be noted that what we have already said disposes of the plaintiff's last three points, and we decline to elaborate further on them. Otherwise, the issues presented for consideration are:

1. Was defendants' counterclaim strictly and literally a plea in recoupment, so as to preclude the entry of a judgment against the plaintiff?

2. Was defendants' counterclaim so defectively pleaded that it stated no claim upon which relief could be granted?

3. Did the trial court apply the proper measure of damages?

4. Was defendants' amendment to their counterclaim at the close of their evidence so substantial and material as to amount to a "new or additional claim" which should have been served upon the plaintiff?

The plaintiff here quotes the ad damnum part of defendants' counterclaim, notes the fact that they proved the cost of clearing the land after plaintiff either quit or was discharged, and summarily concludes that defendants' "theory was recoupment." Asserting upon the authority of *Schroeder v. Prince Charles, Inc.*, 427 S.W.2d 414, 419 (Mo.1968), that a plea in recoupment will not support an affirmative judgment, plaintiff maintains the judgment cannot stand.

This opinion is no place for an extensive discussion of the doctrine of recoupment. The terms "recoupment," "recouper" and "defaulk" are words of art which antedate the King James version of the Bible, see, e. g., *Coulter's Case*, 5 Co. 30(a), 77 Eng.Rep. 98 (K.B.1598), and needless to say have undergone many changes in meaning. The origin of the doctrine as a modern principle is uncertain, 3 T. Sedgwick, Damages, § 1040 (9th ed. 1912); *Kennedy v. Dodge*, 14 Fed.Cas.No.7,701 pp. 310, 312 (D.C.N.Y.

1867) (recognizing the right of recoupment in admiralty), but the books are indeed replete with statements that a common-law recoupment is purely defensive, and no affirmative judgment can be rendered thereon. See, e. g., *Kegan v. Park Bank*, 320 Mo. 623, 652, 8 S.W.2d 858, 872[23] (1927), modified on rehearing 320 Mo. 654, 15 S.W.2d 333 (1927); *Emery v. St. L., K.–N.R. Co.*, 77 Mo. 339, 346–347 (1883).

 Under modern codes of pleading, it is clear that recoupment is meant to be available either as a purely defensive plea or as a counterclaim. 2A J. Moore, Federal Practice § 8.27[3], pp. 1855–1856. The primary guide to proper characterization of a pleading as a "defense" or "counterclaim" is the pleader's intent, for Rule 55.08 provides that ". . . [W]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleadings as if there had been a proper designation." Particularly instructive in this connection is the observation of our preceptor in *Brush v. Miller*, 208 S.W.2d 816, 821 (Mo.App.1948), that:

". . . [B]y such a defense [as purely defensive recoupment] the defendant does not deny the contract and the plaintiff's performance under it, but by proof of defective performance he seeks to avoid his liability to the plaintiff for payment of the agreed price. . . ."

See further, *United States Plywood Corp. v. Hudson Lumber Co.*, 17 F.R.D. 258 (D.C. N.Y.1955), where such a defense was set up in the answer.

 It is clear that defendants intended to state an affirmative counterclaim. The counterclaim is complete in itself, averring a cause of action in the defendants. Defendants pleaded a contract materially different from that pleaded by the plaintiff, breach thereof as well as defective performance, and consequential damages. Plaintiff's first point is without merit.

 Likewise, plaintiff's argument that defendants' counterclaim failed to state a claim upon which relief could be granted is devoid of substance. A pleading is good against such an objection if the averments of the pleading, accorded every reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle the pleader to relief, *Boyer v. Guidicy Marble, Terrazo & Tile Co.*, 246 S.W.2d 742, 744[1] (Mo.1952); *Kersey v. Harbin*, 531 S.W.2d 76, 79[2] (Mo.App.1972), and the pleader is not to be cast merely because his cause of action is imperfectly or defectively stated. *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 855, 253 S.W.2d 976, 977–978[1, 2] (1953). Construed in light of these principles, defendants' counterclaim pleaded an offer, by plaintiff, to perform enumerated services for the sum of $32,000; acceptance of that offer by promise to pay; a subsequent superseding agreement by an offer, on plaintiff's part, to perform the original and some incidental services; acceptance by defendants' promise to pay the sum of $32,000 and to deliver a tractor; breach of the contract by the plaintiff and consequential damages sustained by the defendants. Such are the elements of an action for breach of a contract for personal services. *Vondras v. Titanium Research & Development Co.*, 511 S.W.2d 883, 886[7] (Mo.App.1974).

 We find no merit in the plaintiff's complaint that the trial court applied an erroneous measure of damages. The object of the contract—or contracts, depending upon whose viewpoint is accepted, the purpose in securing plaintiff's services, was to clear the timber—by defendants' evidence, "basically scrub oak"—and other debris from 867 acres of land, move the fallen timber into windrows which could be burned, leaving the acreage "level to where [defendants] could drive a pickup truck over [all of] it." Defendants' evidence was that plaintiff breached his contract by repudiation, and that his part performance had been so defective and incomplete defendants were obliged to hire another contractor to complete the clearing. By wrenching an isolated statement completely from its context, plaintiff would have us construe de-

fendants' evidence as proof of *tortious* injury to their land, but there is nothing in the record, except for that isolated remark, to indicate what "theory" was in defendants' mind or that of the court. What the defendants did offer was proof that they paid another contractor the sum of $34,626.75 to correct and complete the work plaintiff had agreed to do before being overcome by an attack of rue bargain. From the evidence presented, the trial court could reasonably have found that plaintiff breached the contract by repudiation after defective part performance. The defendants' damages were properly measured by the reasonable cost of reconstruction[3] and completion in accordance with the agreement. *Edmonds v. Stratton,* 457 S.W.2d 228, 233[10] (Mo. App.1970). The trial court did not apply an incorrect measure of damages.

Plaintiff's contention that defendants' amendment at the close of their evidence was so substantial and material plaintiff was entitled to notice must be considered in light of the record. In their counterclaim, defendants alleged various species of damages in the amount of $35,804; by amendment long before the trial, they increased their demand to $39,380.75. In their original counterclaim defendants alleged that plaintiff used the TD 20B tractor in attempting to clear their land, decreasing its value in the amount of $3,500. Upon trial, defendants' evidence was that plaintiff had used the tractor for a purpose to which it was not suited, and there was some evidence that the tractor, which belonged to the defendants, had not been properly maintained while plaintiff was using it. Further, defendants abandoned their more speculative allegations of damages and limited their proof to the cost of correction of plaintiff's work and completion of the contract. At the close of all the evidence, defendants' counsel stated: "[Y]our honor, we will amend to show a request for $34,626.75 damages to the land and $3,500 damages to the [tractor]."

Plaintiff cites *Rubbelke v. Aebli,* 340 S.W.2d 747, 752 (Mo.1960), and *Donnell v. Vigus Quarries, Inc.,* 457 S.W.2d 249, 254 (Mo.App.1970), in support of his contention that he was entitled to notice of the amendment. However, in *Rubbelke,* plaintiff amended Count I of his petition so as to change his cause of action from an action for specific performance to an action to impress a resulting trust upon the entire parcel, whereas the original pleadings had claimed only an undivided one-half interest in the land. In *Donnell,* the petition stated no statutory cause of action under § 537.-340, RSMo (1969), V.A.M.S., without the amendment. In both cases cited, the plaintiff effectively introduced a "new or additional claim for relief," and it would seem that if either court had been so inclined, the judgments could have been set aside for want of additional process under Rule 43.-01(a), which requires personal service of "new or additional claims" upon parties in default. The real inquiry, we think, is whether the defendants effectively changed their cause of action by amendment. *Miltenberger v. Center West Enterprises,* 251 S.W.2d 385, 388[5] (Mo.App.1962). We do not find that they did. It is true that they proved only part of the different species of damages alleged, but the contract pleaded in the counterclaim was the one relied upon at the trial, and the *total amount* of damages claimed was not increased by the amendment. The amendment changed neither the facts of which plaintiff had notice, nor the total amount of the judgment he might reasonably have expected would be rendered against him. We conclude it was in the discretion of the trial court to allow the amendment, Rule 55.33(b), and that the trial court's discretion was not abused.

We find no error materially affecting the merits of the action. Accordingly, the judgment is in all respects affirmed.

All concur, except GREENE, J., not participating because not a member of the court when case was submitted.

---

3. Which, in this case, amounted to levelling out the land and repositioning the fallen timber into manageable windrows.