**Donald R. RHODES, Successor Trustee of the Dorothy Spears Revocable Trust and Personal Representative of the Estate of Dorothy Spears, deceased; Vivian Thompson; Dan Spears; Ronald Spears; Imogene Hawkins; and Rickie Kent Spears; Plaintiffs/Appellants,**

v.

**Evelyn HUNT and Carl Hunt, husband and wife; Dorothy Dykes; Gary Lee Heath; Janice Bengel; Jerry Edwin Heath; and Paul Lewis Vanacker, Individually and as Trustee, Defendants/Respondents.**

No. 20105.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 12, 1995.

Motion for Rehearing and Transfer to Supreme Court Denied Jan. 3, 1996.

Application to Transfer Denied
Feb. 20, 1996.

Tom K. O'Loughlin II, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for Plaintiffs/Appellants.

James E. Spain, Keith D. Sorrell, Spain, Merrell and Miller, Poplar Bluff, and Yewell G. Lawrence, Jr., Dexter, for all Defendants/Respondents except Paul Lewis Vanacker.

No appearance, for Defendant/Respondent Vanacker.

CROW, Judge.

This multi-count action is a dispute mainly between offspring of Gilbert Spears and Dorothy Spears, both deceased. By Count VI of their first amended petition, the plaintiffs (whom we shall introduce *infra*) sought judgment setting aside a quitclaim deed.

The trial court severed Count VI from the other counts for purpose of trial and heard it with an advisory jury, which returned a verdict "in favor of defendants."[1] Pursuant to Rule 74.01(b), Missouri Rules of Civil Procedure (1995), the trial court expressly determined there was no just reason for delay in entering judgment on Count VI. Consistent with the verdict, the trial court entered judgment "in favor of the Defendants and against the Plaintiffs," ordering that the deed "be not set aside and cancelled." This appeal followed.

As best we can determine from the record, the land described in the disputed deed was acquired by Gilbert[2] and Dorothy, husband and wife, in 1940.[3]

Gilbert and Dorothy had five children: Vivian Thompson, Imogene Hawkins, Evelyn Hunt, Nadine Heath and Eugene Spears. Eugene died in 1960, survived by four sons: Dan Spears, Ronald Spears, Jackie Lynn Spears and Rickie Kent Spears.

The disputed deed was signed and acknowledged by Gilbert and Dorothy on January 8, 1975. It provides, in pertinent part:

"This Deed, Made and entered into ... by and between Gilbert Spears and Dorothy Spears ... parties of the first part, and Gilbert Spears and Dorothy Spears, as tenants by the entirety for their joint lives, and then to the survivor of them for his or her life, remainder in fee unto Carl E. Hunt and Evelyn Hunt ... parties of the second part."

The deed states that the parties of the first part do "Remise, Release and forever Quit-Claim unto the said parties of the second part" certain land in Stoddard County described as: "All of the West half (W½) of Lots Two (2), Three (3) and Four (4) of the Northeast Quarter (NE¼)" of a specified section, township and range. Carl E. Hunt and Evelyn Hunt, grantees of the remainder in fee, are husband and wife.

At the time Gilbert and Dorothy signed the disputed deed they owned other tracts of farmland.[4] Although the other tracts are not in dispute here, we mention them because of the evidence recounted in the next four paragraphs.

C.H. Parsons, a lawyer, drafted the disputed deed for Gilbert and Dorothy. Simultaneously, Parsons drafted another quitclaim deed, a *copy* of which was received in evidence at trial. We henceforth refer to this latter deed as "the missing deed," as the original has not been found.

We deduce from the testimony about the missing deed[5] that it, like the disputed deed, was a conveyance by Gilbert and Dorothy to themselves as tenants by the entirety for their joint lives, then to the survivor for his

---

1. The record reveals the trial court gave the jury instructions numbered 1 through 7. No instruction is in the legal file, hence we cannot ascertain what issues were framed for the jury to resolve.

2. Where someone is mentioned frequently in this opinion, we shall refer to him or her by forename or surname, as convenient. We do so for brevity and clarity, intending no disrespect.

3. The deed by which Gilbert and Dorothy acquired the land was received in evidence at trial

as Defendants' Exhibit H. It has not been filed with us. We glean from testimony about it that it was dated November 1, 1940, and recorded May 6, 1941.

4. A United States Estate Tax Return filed after Gilbert's death in 1982 lists six farms. The description of one includes land described in the disputed deed.

5. The copy of the missing deed produced at trial was not filed with us.

or her life, with the remainder in fee to certain of their offspring.

Asked who the remaindermen were in the missing deed, Parsons responded: "Imogene Hawkins, Evelyn Hunt, Nadine Heath all received one fourth interest each. And then one fourth ... [was] divided as tenants in common between Ronnie Spears, Dan Spears, Jack Spears and Rickie Spears. Those were Eugene's children."

Asked why Vivian Thompson was not a grantee in the missing deed, Parsons explained that Gilbert and Dorothy "were mad at her." Parsons' testimony continued:

"Q. ... did [the missing deed] include all of the other farm land of the Spears with the exception of the land described in [the disputed deed] to your knowledge?

A. That was my understanding.

. . . .

Q. Did Mr. and Mrs. Spears indicate whether they intended to deliver [the disputed deed] to Carl and Evelyn?

A. They did not.... They did not indicate to me what they were going to do.

. . . .

Q. And what happened to the two deeds after you prepared them and the Spears executed them?

A. I don't have any idea. After they were executed they left the office with them and, huh, I don't know what happened to them."

On January 2, 1976, a year after signing the disputed deed and the missing deed, Gilbert and Dorothy signed wills prepared for them by Parsons. Parsons described the wills as "reciprocal," that is, Gilbert's will left everything to Dorothy, and her will left everything to him. After those provisions, said Parsons, both wills left "one fifth to Vivian, one fifth to Imogene, one fifth to Evelyn, one fifth to Nadine, and one fifth to be divided equally between Ronnie Spears, Dan Spears, Jack Spear [sic] and Rickie Spears." [6] Parsons' testimony continued:

"Q. Did that will purport to cover all of the property which the Spears might own real, personal or mixed?

A. Well, it covered everything. It was—This will was made as a catchall for anything that they might not have taken care of by prior deeds."

On September 27, 1978, Gilbert and Dorothy signed and acknowledged a warranty deed conveying a parcel of land to Southwestern Bell Telephone Co. On May 8, 1981, Gilbert and Dorothy signed and acknowledged a warranty deed conveying a parcel of land to Averett & Son, Inc. Although the evidence is imprecise, it is inferable that each of those deeds conveyed some land described in the disputed deed. Neither Carl Hunt nor Evelyn Hunt (grantees of the remainder interest in the disputed deed) signed the deeds described in the first and second sentences in this paragraph.

Gilbert died January 7, 1982.

On either January 29, 1982, or February 6, 1982, Dorothy, Evelyn Hunt and Vivian Thompson went to a bank in Dexter where Gilbert and Dorothy had a lock box.[7] Vivian testified Evelyn reached into the box, withdrew a document, and handed it to her. Vivian examined the document, recognizing it as a quitclaim deed from Gilbert and Dorothy to Evelyn and Carl Hunt. In their briefs, the parties agree the document was the disputed deed. Vivian recounted she asked Dorothy about the disputed deed, but Dorothy said she did not know what it was.

Evelyn recalled that the disputed deed was in the lock box, but did not remember Dorothy's comment. Both Evelyn and Vivian testified that after Vivian looked at the disputed deed, it was placed back in the box.

Around that time (February, 1982), Dorothy contacted John William Ringer, a lawyer. Ringer's testimony:

"Q. What was that in regard to?

A. That was in regard to processing Mr. Spears estate. He had expired and

---

6. A copy of Gilbert's will was received in evidence at trial as Plaintiffs' Exhibit 7. It has not been filed with us, hence we derive our knowledge about it from Parsons' testimony.

7. Evelyn testified the trip occurred on either January 29, 1982, or February 6, 1982. Vivian was positive it occurred the latter date.

there were a couple of trucks that were not in their joint names and I processed what was called a refusal of letters, which is a very brief document that's filed with the probate court so Mrs. Spears could get the title to those two trucks in her name.

Q. Everything at that time was in Mr. Spears name and Mrs. Spears with the exception of a couple of trucks?

A. As far as what my records reflect, yes."

Some two years later, on February 29, 1984, Nadine Heath died.[8] She was survived by five children: Dorothy Dykes, Gary Lee Heath, Janice Bengel, Jerry Edwin Heath and Michael Kent Heath.

About four and a half months after Nadine's death, Dorothy consulted lawyer Ringer about "some revisions to her will." They conferred again some two months later, and Dorothy began considering a trust as a way to "avoid probate expenses." Ringer recalled Dorothy telling him that she "had one piece of land that she only had a life estate in."

On November 14, 1984, Dorothy signed a "revised will" prepared by Ringer. Ringer was "working on the trust" for Dorothy when he became a judge.[9] His partner, lawyer Tom Bischof, thereupon took over that project.[10]

■ The evidence set forth next is crucial in resolving this appeal. In narrating it, we are mindful that inasmuch as this case was tried to an advisory jury, we must not disturb the judgment unless it is against the weight of the evidence, unless it is unsupported by substantial evidence, or unless it erroneously declares or erroneously applies the law. *Mo–Kan Teamsters Health & Welfare Fund v. Clark*, 803 S.W.2d 61, 63[1] (Mo.App.W.D.1990).

By July 30, 1986, lawyer Bischof had completed preparation of the trust instrument for Dorothy. She signed it that date.[11]

The next day, Dorothy signed a deed conveying land to herself and Evelyn as trustees of the trust.[12] According to Bischof, the land described in the disputed deed was not put into the trust. Bischof explained:

"Mrs. Spears was going to give [the] real estate [described in the disputed deed] to Evelyn and Carl Hunt and method of transmitting that at her death was through [the disputed deed]. There was really no need to put the balance of the life estate, her remaining life time interest in the quit claim in that in this same tract of real estate into the trust. It was kind of unnecessary to put it in there."

At the time that decision was made, the disputed deed had not yet been recorded, even though it had existed some eleven and a half years. Bischof's testimony:

"Q. ... now you have to advise Mrs. Spears as to what should be done with that quit claim deed if it was going to make sure it went to her daughter?

A. That's true.

. . . .

Q Did you ask her whether or not she wanted that quit claim deed land to go to her daughter?

A. Yes, I did.

Q. And what did you tell you when you asked her that question?

A. She wanted that to go to Evelyn and Carl.

---

8. As reported earlier, Nadine Heath was one of the five children of Gilbert and Dorothy. Nadine was the second child to die. It will be recalled that Eugene Spears was the first to die, passing away in 1960, some 22 years before Gilbert.

9. Ringer testified he became a judge March 1, 1985, but later testified it may have been April 1. After becoming a judge, he decided to return to private practice. He believed he was "back in the practice in July of '86."

10. Bischof testified Ringer was a judge from March 1, 1986, until June 1, 1987. According to Bischof, his first work on the trust was May 27, 1986.

11. A copy of the trust instrument was received in evidence at trial as Plaintiffs' Exhibit 1. It has not been filed with us.

12. That deed was received in evidence at trial as Plaintiffs' Exhibit 12. It has not been filed with us. We infer the land described in Exhibit 12 is the land described in the missing deed, but we have no way to confirm that assumption.

Q. And did you tell her how she ought to do that?

A. Yes, I did.

Q. And what did you tell her she should do on that day with it, July 30th or 31st or whatever date it was?

A. I know I advised her she needed to file it up in the Recorder of Deeds Office in Stoddard County.

Q. And did you advise her by recording that deed it would have the effect of preserving [sic] a life estate in her and after that it would go to her daughter?

A. That's correct, I did.

. . . .

Q. Whose idea was it to record that deed?

A. Mrs. Spears."

By letter dated August 19, 1986, Bischof advised Dorothy: "To my knowledge, you have now transferred into the Dorothy Spears Revocable Trust, all of your real estate, with the exception of that portion that you have already deeded to your daughter Evelyn Hunt and retained a life estate for yourself." The letter informed Dorothy that the trust instrument, the deed conveying real estate to the trust, and the disputed deed had been filed with the Stoddard County Recorder.

The disputed deed was recorded August 20, 1986.

Dorothy died April 8, 1992.

We cannot determine from the fragmentary record when this suit was filed, but we know it was pending on December 30, 1992, because it was received that date by the Circuit Court of Butler County from Stoddard County, evidently on change of venue. The first amended petition, filed February 14, 1994, names the following plaintiffs: Donald R. Rhodes, Successor Trustee of the Dorothy Spears Revocable Trust and Personal Representative of the Estate of Dorothy Spears, deceased; Imogene Hawkins; Vivian Thompson; Dan Spears; Ronald Spears; Jackie Lynn Spears; and Rickie Kent Spears. As noted earlier, Imogene Hawkins

and Vivian Thompson are two of the three surviving children of Gilbert and Dorothy; Dan Spears, Ronald Spears, Jackie Lynn Spears and Rickie Kent Spears are the four offspring of Eugene Spears, who predeceased both Gilbert and Dorothy.

The first amended petition names the following defendants: Evelyn Hunt; Carl Hunt; Dorothy Dykes; Gary Lee Heath; Janice Bengel; Jerry Edwin Heath; and "Paul Lewis Vanacker, Individually and as Trustee." As we have seen, Dorothy Dykes, Gary Lee Heath, Janice Bengel and Jerry Edwin Heath are four of the five children of Nadine Heath, who survived Gilbert but predeceased Dorothy. We glean from the record that Nadine's fifth child, Michael Kent Heath, died January 16, 1993, while this action was pending. Paul Lewis Vanacker [13] identifies himself "as an individual and as trustee of the Vanacker and Heath Revocable Trust." Vanacker prays the trial court to determine that he "is the successor to Michael Kent Heath with respect to the estate and trust of Dorothy Spears, deceased."

Jackie Lynn Spears, one of the plaintiffs mentioned above, died in April, 1994. The appellants' brief states Jackie's surviving brothers were "substituted" for him in this action. We question that assertion inasmuch as Jackie's three brothers were named plaintiffs in the first amended petition filed February 14, 1994, some two months before Jackie's death. However, no issue is raised in this appeal about substitution for Jackie, and no issue is raised about Vanacker's alleged status as successor to the interest of Michael Kent Heath. Consequently, we leave the case as we find it regarding those matters.

The plaintiffs, as they existed on the date judgment was entered,[14] bring this appeal. We henceforth refer to them as "Appellants." The lone point relied on in Appellants' brief is:

"**The court erred when it found the quit claim deed transferred title to remainderman [sic] Carl and Evelyn Hunt**

---

13. His name also appears in the record as "Paul Lewis Van Acker."

14. Judgment was entered February 21, 1995.

because no legal delivery of the quit claim deed could occur where (A) co-grantor Gilbert Spears was dead at the time of claimed delivery; (B) the quit claim deed was never delivered prior to Gilbert's death where the grantors' title was that of tenants-by-the-entirety; or, the deed was never actually delivered from mother to daughter under the evidence most favorable to Carl and Evelyn."

With the exception of Vanacker, all of the defendants as they existed at time of trial have filed a brief. We henceforth refer to the defendants who filed the brief as "Respondents."[15] In response to Appellants' point relied on, Respondents state:

"The trial court did not err when it ruled that the quit claim deed would not be set aside and cancelled because a proper delivery of the deed occurred in that (A) Gilbert Spears was both grantor and grantee of the deed, delivering the deed to himself and that further delivery to any other remaindermen was unnecessary to make a valid conveyance and (B) the trial court was presented with competent evidence that the quit claim deed was also delivered by Dorothy Spears."

Appellants' point and the response to it by Respondents present two issues, i.e., was there a delivery of the disputed deed before Gilbert died, and if not, was there a delivery after he died.

■ Much of the law pertinent to those issues is found in *Galloway v. Galloway*, 169 S.W.2d 883 (Mo.1943). A deed, to be operative as a transfer of the ownership of land or an interest or estate therein, must be delivered; it is delivery that gives the instrument force and effect. *Id.* at 888[10]. Delivery signifies that all dominion and control over the deed is passed from the grantor to the grantee, or to someone for him, with the intention of transferring the present owner-

ship of land, or an interest or estate therein. *Id.* at [11]. Postponing enjoyment of the estate until the grantor's death does not make an instrument, otherwise a deed, testamentary in nature if the instrument is delivered in the lifetime of the grantor, for if so delivered, a present estate is transferred. *Id.* at [12]. The intention of the parties, especially of the grantor, is the essence of delivery. *Id.* at [13]. Such intention may be manifested by acts, words, or both. *Id.* at [14]. The burden of proving nondelivery is upon the party who seeks to invalidate the deed because of alleged nondelivery. *Id.* at [17].

■ Appellants emphasize that the disputed deed was in the exclusive possession of Gilbert and Dorothy in their bank box when Gilbert died. Consequently, assert Appellants, "[N]o argument can be made that delivery occurred while Gilbert and Dorothy both lived." In support of that proclamation, Appellants cite *Meadows v. Brich*, 606 S.W.2d 258, 260[7] (Mo.App.S.D.1980), which holds that if a deed, although acknowledged, is not recorded and is in the grantor's possession at the time of his death, those circumstances, unless explained, are deemed conclusive that the parties did not intend a complete transfer. There is a presumption of nondelivery if the deed was in the grantor's possession at the time of his death and was not then recorded; such facts place upon the grantee the task of going forward with the evidence and the burden of persuasion to rebut the presumption of nondelivery. *Id.* at [9].

With commendable industry, Respondents strenuously argue that inasmuch as Gilbert and Dorothy, by the disputed deed, conveyed a life estate to themselves, they were both grantors and grantees. Therefore, say Respondents, Gilbert and Dorothy delivered the deed to themselves when they executed it

---

15. Defendants Evelyn Hunt and Carl Hunt were represented at trial by lawyers James E. Spain and Karen Jolly Miller. Defendants Dorothy Dykes, Gary Lee Heath, Janice Bengel and Jerry Edwin Heath were represented at trial by lawyer Yewell G. Lawrence, Jr. The latter four defendants, in their answer, prayed the trial court to dismiss Count VI of the plaintiffs' first amended petition even though it appears those four defendants would have benefited had the plaintiffs won on Count VI. Those four defendants, through lawyer Lawrence, have filed a joint brief with defendants Evelyn and Carl Hunt, praying this Court to affirm the judgment. Vanacker did not appear at trial, and no one appeared for him.

January 8, 1975, and no further delivery was necessary. Furthermore, assert Respondents, Evelyn and Carl Hunt moved into a house on land described in the disputed deed in 1969 and remained there continuously afterward.

As mentioned earlier, delivery occurs only where the grantor intends that the deed be immediately operative and effective; that is, the grantor must intend to presently vest in the grantee the interest or estate set forth in the deed. *Cleary v. Cleary*, 273 S.W.2d 340, 345–46[5] and [7] (Mo.1954).

Because Gilbert and Dorothy (a) never handed the disputed deed to either Evelyn or Carl during Gilbert's lifetime, but instead retained exclusive possession of it, (b) never recorded the disputed deed during Gilbert's lifetime, and (c) twice conveyed segments of the land described in the disputed deed to third parties during Gilbert's lifetime without asking Evelyn and Carl to join in those conveyances, a strong argument can be made that a fact-finder could not reasonably conclude Gilbert and Dorothy intended to vest a remainder interest in Evelyn and Carl on January 8, 1975, or any other time during Gilbert's lifetime. However, disposition of this appeal does not require us to address that argument.

■ Both sides agree that immediately prior to signing and acknowledging the disputed deed, Gilbert and Dorothy owned the land described therein as tenants by the entirety. Accepting, arguendo, Appellants' premise that the disputed deed was never delivered during Gilbert's lifetime, the tenancy by the entirety in fee simple absolute remained intact until he died. Upon Gilbert's death, Dorothy, the surviving entireties tenant, became sole owner of the land described in the disputed deed (except the segments previously conveyed to third parties, mentioned *supra*). *Nelson v. Hotchkiss*, 601 S.W.2d 14, 20 (Mo. banc 1980); *Clements v. Kolie*, 882 S.W.2d 299, 300[3] (Mo.App.S.D.1994). Appellants acknowledge this, stating in their brief: "At the instant of Gilbert's death Dorothy was the surviving tenant-by-the-entirety of the whole estate, vested with the power to convey the farm,

alone, to whomever she chose. . . . She held full fee simple absolute."

Despite that concession, Appellants argue that any attempt by Dorothy to deliver the disputed deed to Evelyn and Carl after Gilbert's death was a nullity because Dorothy "had no legal ability to deliver the [disputed deed] for Gilbert after his death." In Appellants' words, Dorothy "had no authority to create a joint and survivor life estate in herself and Gilbert by delivery [after Gilbert died]," and Dorothy "had no power or authority to deliver Gilbert's interest as a tenant-by-the-entirety in July of 1986 because Gilbert was dead."

The flaw in those arguments is that once Gilbert died, his ownership interest in the land described in the disputed deed ceased to exist. As Appellants themselves admit, Dorothy thereupon became sole owner with power to convey, alone, to anyone she chose. Consequently, any delivery of the disputed deed by Dorothy after Gilbert's death was in her own right as sole owner. She was not delivering the deed for Gilbert, as his death extinguished his interest in the land.

We recognize, of course, that the disputed deed ostensibly created a life estate in Gilbert and Dorothy as tenants by the entirety for their joint lives, followed by a life estate in the survivor for the survivor's life. However, only one of those lives (Dorothy's) existed when Dorothy undertook to deliver the disputed deed after Gilbert's death. At that time, Gilbert's signature on the deed and its reference to his life were of no consequence, as his life had ended and Dorothy was the sole owner.

In support of their hypothesis that any purported delivery of the disputed deed by Dorothy after Gilbert's death was a nullity, Appellants cite *Forster v. Clark*, 351 Mo. 59, 171 S.W.2d 647 (1943). It does not aid them because of a significant factual difference between it and the instant case.

In *Forster*, a husband and wife executed a deed purporting to convey land to their son, Lee. Fifteen years later, the husband died. Shortly after his death, the widow gave the deed to Lee; he recorded it. Some of the decedent's children and heirs sued Lee and

the widow, alleging the deed was void for lack of delivery. The suing parties sought partition and sale of the land and distribution of the proceeds.

The trial court in *Forster* entered judgment cancelling the deed and ordering partition. Affirming the judgment, the Supreme Court of Missouri held the evidence sufficient to support a finding that the deceased grantor did not intend to part with dominion over the deed or intend that it take effect as a present transfer. *Id.* at 649.

The crucial difference between *Forster* and the instant case is that in *Forster* it is evident that the land was not owned in a tenancy by the entirety. If it had been, setting the deed aside would not have entitled the children and other heirs of the deceased to partition. The widow, as surviving entireties tenant, would have been sole owner.

Appellants apparently assume the land in *Forster* was owned in a tenancy by the entirety because the wife signed the deed to Lee. However, it is inferable that she did so to release her marital interest in the land. Inasmuch as the land in *Forster* was owned by the husband, the case hinged on whether the deed was delivered during his lifetime. Because it was not, he owned the land when he died, hence the suing parties were entitled to partition.

In contrast, Gilbert's interest as an entireties tenant in the land described in the disputed deed was extinguished by his death, and Dorothy, as surviving entireties tenant, became sole owner. Appellants acknowledge Dorothy could have thereafter conveyed the land to Evelyn and Carl by executing a new deed as sole grantor.

Appellants cite two other Missouri cases in support of their claim that any purported delivery of the disputed deed by Dorothy after Gilbert's death was a nullity. We have read those cases; they are too factually different from the instant case to warrant discussion.

A Florida case, *Fleming v. Fleming*, 352 So.2d 895 (Fla.App.1977), though not factually identical to the instant case, supports the proposition that where (1) a deed is made by a husband and wife, (2) the husband subsequently dies, (3) the wife is the husband's heir, and (4) the wife thereafter delivers or authorizes delivery of the deed, the conveyance is valid and the husband's joinder in the deed may be disregarded. *Id.* at 898–99[5].

For the reasons set forth above, we reject Appellants' contention that Dorothy could not make a valid delivery of the disputed deed to Evelyn and Carl after Gilbert's death.

The only remaining issue is whether Dorothy in fact did so. Appellants assert the disputed deed "was never actually delivered from [Dorothy] to [Evelyn]." Appellants acknowledge, "This is a fact argument."

Surprisingly, we find scant case law regarding the role of the trial court in the fact-finding process where an advisory jury is empaneled. In *Staab v. Thoreson*, 579 S.W.2d 414, 418[5] (Mo.App.S.D.1979), this Court said, in dictum, that in court-tried cases the trial court is the ultimate trier of fact whether or not an advisory jury is empaneled. In an earlier case, *In re Estate of Cromwell*, 522 S.W.2d 36, 38 (Mo.App.1975), both sides agreed that in reviewing a case tried by the court with an advisory jury, an appellate court is obligated to give due regard to the opportunity of the trial court to judge credibility of the witnesses. *See:* Rule 73.01(b) and (c)(2), Missouri Rules of Civil Procedure (1995).

■ As observed earlier,[16] we cannot determine from the record what fact issues were framed for the advisory jury to resolve. However, Appellants do not claim the judgment is inconsistent with the verdict. Therefore, in examining the evidence on the issue of delivery we shall, consistent with the implicit suggestion of *Staab* and *Cromwell*, view the evidence in the light most favorable to the judgment.

■ Lawyer Bischof's testimony regarding Dorothy's intent in July, 1986, that the land described in the disputed deed be conveyed to Evelyn and Carl (subject to Dorothy's life estate), and her decision to record

16. Footnote 1, *supra.*

the disputed deed, is set forth earlier in this opinion. To counter that testimony, Appellants seize upon other evidence in an effort to demonstrate that Dorothy thereafter rescinded her directive to Bischof to record the disputed deed.

We have scrutinized the evidence cited by Appellants. Although it may be susceptible to various interpretations, it appears to concern documents other than the disputed deed. Viewed favorably to the judgment, the evidence relied on by Appellants does not compel a finding that Dorothy changed her mind about recording the disputed deed.

Bischof's recordation of the disputed deed at Dorothy's direction created a presumption of delivery, and although recordation does not operate as a delivery, recordation establishes a prima facie case of delivery. *LeMehaute v. LeMehaute*, 585 S.W.2d 276, 279–80[7] (Mo.App.W.D.1979). Absent effective rebuttal by Appellants, the disputed deed, having been recorded, transferred ownership of the remainder interest to Evelyn and Carl, subject to Dorothy's life estate. *Wilkie v. Elmore*, 395 S.W.2d 168, 172[7] (Mo.1965).

Furthermore, after Bischof's letter of August 19, 1986, informing Dorothy that the disputed deed had been filed with the Stoddard County Recorder, there is no evidence she manifested, by word or act, that recordation was contrary to her intent. As we have seen, almost six years elapsed between recordation and Dorothy's death.

Viewed favorably to the judgment, there is substantial evidence to support a finding that Dorothy, in establishing her trust, intended that the land described in the disputed deed go to Evelyn and Carl upon Dorothy's death instead of being part of the trust corpus, that Dorothy understood from Bischof that she should record the disputed deed in order to achieve that objective, and that Dorothy placed the disputed deed in Bischof's possession for recordation. That evidence made a prima facie case of delivery. *LeMehaute*, 585 S.W.2d at 279–80[7]. Viewed favorably to the judgment, the evidence relied on by Appellants is insufficient to rebut the presumption of delivery.

Appellants' point relied on is denied, and the judgment is affirmed.

PREWITT, P.J., concurs.

PARRISH, J., dissents and files dissenting opinion.

PARRISH, Judge, dissenting.

I respectfully dissent.

"The essential elements of a deed are: (1) Names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor and (5) acceptance by the grantee." *Boatmen's National Bank of St. Louis v. Dandy*, 804 S.W.2d 783, 785 (Mo.App.1990).

The grantors in the disputed deed are Gilbert Spears and Dorothy Spears. "[A] deed takes effect from the date of its delivery, not from the time of its execution." *Sando v. Phillips*, 319 S.W.2d 648, 652 (Mo. 1959). Had the deed been delivered during the joint lifetimes of the named grantors, it would have effectively conveyed Gilbert's and Dorothy's interests in the real estate described in the deed. This did not occur. The attempt to deliver the deed after Gilbert's death is, in my opinion, of no consequence because the deed does not name grantors who were capable of conveying real estate at the time of the attempted delivery nor does it name grantees who could accept the deed.

I further believe the evidence was not sufficient for a fact-finder to reasonably conclude that Gilbert and Dorothy delivered the deed prior to Gilbert's death. I would reverse and remand with directions that judgment enter setting aside the disputed deed.