**Doris B. MEADOWS, Deloris Presley, Cameron Brich and Judy Brich, Plaintiffs–Respondents,**

v.

**Dwayne N. BRICH and Virginia R. Brich, Husband and Wife, and Emma Brich, a Widow, Defendants–Appellants.**

No. 11581.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 16, 1980.

Motion for Rehearing or Transfer
Denied Oct. 6, 1980.

Application to Transfer Denied
Nov. 12, 1980.

---

William B. Miller, Philip C. Ehli, Kansas City, for defendants appellants.

Dale L. Davis, Bussell, Hough & O'Neal, Springfield, Ralph Gilchrist, Bolivar, for plaintiffs respondents.

FLANIGAN, Chief Judge.

The four plaintiffs sued their mother Emma Brich and their brother Dwayne Brich and Dwayne's wife Virginia. The petition alleged that the plaintiffs and defendant Dwayne were owners, as tenants in

common, of an 80–acre farm in Polk County. The petition claimed that the tenancy in common arose by reason of a deed executed on November 1, 1969, in which the four plaintiffs and defendant Dwayne were grantees and their deceased father Paul Brich and defendant Emma Brich were grantors. The petition alleged delivery of the 1969 deed. The trial court, sitting without a jury, found that the deed had been delivered and awarded plaintiffs the requested relief, which included a declaration of title and partition by sale. Defendants appeal.

Although other issues[1] were before the trial court, the disposition of this appeal hinges upon the correctness of the trial court's finding that the deed had been delivered. In *Shroyer v. Shroyer*, 425 S.W.2d 214 (Mo.1968), the supreme court, citing many authorities, enunciated several of the principles which govern this appeal. They are set forth in the next four paragraphs.

 Whether or not a deed has been delivered is a mixed question of law and fact. The element which controls the resolution of that question is the intention of the parties, especially the intention of the grantor. The vital inquiry is whether the grantor intended a complete transfer whether the grantor *parted with dominion over the instrument* with the intention of relinquishing *all* dominion over it and of making it presently operative as a conveyance of the title to the land.

 It is not necessary, to effectuate delivery, that the deed actually be handed over to the grantee or to another person for the grantee. There may be a delivery notwithstanding the deed remains in the custody of the grantor. If a valid delivery takes place, it is not rendered ineffectual by the act of the grantee in giving the deed into the custody of the grantor for safekeeping. It is all a question of the intention of the parties, which may be manifested by words or acts or both.

 If the deed, although acknowledged, is not recorded and is in the grantor's possession at the time of his death, those circumstances, unless explained, are deemed conclusive that the parties did not intend a complete transfer. If there is an unequivocal showing that the grantee was given possession of the deed, a presumption of delivery arises. Such a presumption, however, does not arise where the evidence shows that the grantor handed the deed to one of two grantees momentarily, for the purpose of reading it, and at the grantor's direction it is immediately taken back into grantor's possession, to be kept by him until his death.

 There is a presumption of *non-delivery* if the evidence shows that the deed was in grantor's possession at the time of his death and was not then recorded. Such a showing places upon grantees the burden of going forward with the evidence, "more accurately, the burden of persuasion," to rebut the presumption of non-delivery.

 Contrary to plaintiffs' view, the burden of proof was upon plaintiffs to prove delivery of the 1969 deed. *Reasor v.*

1. The petition alleged that on December 7, 1976, defendant Emma Brich conveyed the farm by warranty deed to defendants Dwayne Brich and wife. The petition charged that the 1976 deed was the result of undue influence exerted by the grantees upon the grantor Emma. Whether plaintiffs have any standing to attack the 1976 deed is, to say the least, open to question.

"While Maggie lived, the plaintiffs as prospective heirs had no vested interest in her property and could not have challenged the conveyances she made to the Reeds.... They were merely heirs expectant or heirs apparent with only the possibility of inheritance from Maggie, not a sufficiently fixed interest in the property of the aunt to sue for cancellation of the deeds of that ancestor." *Pemberton v. Reed*, 545 S.W.2d 698, 702 (Mo.App.1976) (citing authorities).

Under exceptional circumstances, neither pleaded nor proved here, prospective heirs may sue for the benefit of their parent, the grantor in the challenged deed, although the grantor is still alive and not himself challenging it. See *Cull v. Pfeifer*, 307 S.W.2d 424 (Mo.1957).

The instant record would not support plaintiffs' challenge to the 1976 deed. If, as plaintiffs claim, the 1969 deed was delivered, the 1976 deed would be ineffectual because the grantor in it would have had no title to convey.

*Marshall*, 359 Mo. 130, 221 S.W.2d 111, 116[11, 12] (1949). A deed delivered to one of several grantees operates as a delivery to all of them, in the absence of a disclaimer. *LaMehaute v. LeMehaute*, 585 S.W.2d 276, 280[10] (Mo.App.1979).

On this appeal the defendants present several points but each is bottomed upon their basic contention that the evidence is insufficient to support the trial court's finding that the 1969 deed was delivered. This court agrees with defendants.

■ On November 1, 1969, Paul Brich and his wife Emma owned the farm as tenants by the entireties. On that date they went to the office of attorney Richard Collins in Bolivar. Collins prepared a warranty deed in which the grantors were Paul and Emma and the grantees were their five children: plaintiffs Doris Meadows, Deloris Presley, Cameron Brich, Judy Brich, and defendant Dwayne Brich. The deed, in standard form, was signed by Paul and Emma, and attorney Collins, a notary public, took their acknowledgment. The deed did not reserve a life estate in the grantors. At the time of trial the deed had not been recorded.

Paul and Emma continued to live on the farm until Paul's death on June 11, 1975. All of the grantees lived elsewhere. During that time the farm was operated by Paul and Emma. They paid the taxes on it and kept all of the profits. None of the grantees, prior to Paul's death, exercised or attempted to exercise any control over the farm or its operation, although some of them did help with some of the farm work after Paul's death.

Plaintiffs made no attempt to show that the deed was delivered to plaintiff Doris Meadows. Indeed defendants introduced a letter, written in 1976, from Doris to her mother Emma, in which Doris said, "Can't understand why you don't sell the place to Dwayne and go into town where it is closer to stores and someone to talk to and see you are all right." Although Doris was present at the trial, she did not testify.

On the issue of whether the deed was delivered to plaintiff Deloris Presley, plaintiffs' evidence showed that "in the last part of 1969" Paul and Emma went to Deloris' home in Springfield. Also present was Deloris' husband, Norman Presley. Paul handed the deed to Deloris and said, "Deloris, I want to give you this here." Deloris said, "Is this legal" and Emma said, "Yes, Mr. Collins said to do it this way, show it to the parties and then take it back and put it in a steel box for safekeeping."

Deloris, a witness for herself and her co-plaintiffs, testified:

"Q. Now, when that deed was given to you, when you were showed it, you did not keep it?

A. No.

Q. You gave it right back to them?

A. Yes. He said he was going to keep it for us.

Q. And you never saw it again?

A. No."

Norman Presley, a witness for the plaintiffs, testified that Deloris "had to give the deed right back" to Paul.

Paul told Deloris that he did not want the deed recorded because he was afraid he might lose his old age pension. The deed was in the possession of the grantors when they left Deloris' house.

On the issue of whether the deed was delivered to plaintiff Cameron Brich, Cameron testified that in June 1971 he was at the farm visiting his parents. Cameron's wife Norma was with him. At Paul's suggestion Cameron and Norma went out "to that little place where [grantors] kept that box" and Cameron looked at the deed and so did Norma. According to Cameron "[Paul] told me I had as much access to the deed as he did."

On the issue of whether the deed was delivered to plaintiff Judy Brich, Judy testified that in 1970 or 1971 she came to the farm for a weekend visit and "Paul went out to his little old shop and got the deed and brought it in and called Emma in there and Paul said, 'I have to present this to you

and it is a deed to the farm and you are to record it.'" However, Judy did not record the deed and, although her testimony is vague, it seems clear that it remained in the possession of Paul except for Judy's brief inspection of it when he handed it to her. Other testimony elicited by the plaintiffs made it clear that Paul did not want the deed recorded until after his death.

On the issue of whether the deed was delivered to defendant Dwayne Brich, Dwayne testified that in 1971 or 1972 "Paul talked to me about the deed and told me it was up in the box down in the shop." The lawsuit was filed in 1977. Dwayne testified that the only time he saw the deed was "after the lawsuit came up." Dwayne sent his son "to where Mom had it back in the old closet." The son "got it out" and showed it to Dwayne. The deed was in the box. Dwayne testified the box was never in his possession.

Norma Brich, a witness for the plaintiffs, testified that on the day of Paul's funeral Emma made the remark, in the presence of some of the grantees, "The deed is in that box on the farm and all you have to do is take it and get it recorded and all you kids are taken care of."

The foregoing evidence, reviewed in light of the governing principles, is insufficient to support the trial court's finding that the deed was delivered. In reaching this conclusion this court is mindful of the following factors:

(a) The deed did not reserve a life estate in the grantors. They, however, remained in possession of the land until the death of Paul. None of the grantees was in possession or exercised any dominion over the land during that period. The grantors paid the taxes and derived all benefit from the use of the land.

(b) The deed was never recorded.

(c) The grantors did not want the deed recorded during their lifetime and Paul was apprehensive that an effective conveyance would prejudice his old age pension.

(d) Although the deed was displayed briefly to some of the grantees and they were permitted to hold and read it, for all practical purposes it remained in the possession and control of the grantors throughout Paul's lifetime.

(e) It cannot be properly said that the grantees had, together with the grantors, "mutual access" to the deed. It remained at all times at the farm except when it was taken once to Springfield for display to Deloris. Cameron's inspection of the deed at the farm was done only at the instance and with the permission of Paul who remained in possession of it. The same is true of Judy's inspection of it.

As stated in *Klatt v. Wolff*, 173 S.W.2d 933, 936 (Mo.1943), "A manual delivery of a deed is not conclusive proof of a delivery, since the transfer of the dominion and control over the deed must be unhampered with the reservation of any right of revocation or recall and must be with the intent to presently pass title." A fair assessment of this record shows that no such transfer of the dominion over the deed took place. Similarly the following language of *Harrison v. Edmonston*, 248 S.W. 586, 588[2] (Mo. 1923) is apposite: "In order to make the delivery of a deed effectual the grantor must part with all control over it. He must place it beyond the possibility of recovery.... The evidence offered by the plaintiff showed that the grantor intended to retain control of the deed as long as he lived, and placed it where he might recall it at any time."

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment denying plaintiffs relief on the petition and decreeing that the 1969 deed was not delivered.

TITUS, GREENE and PREWITT, JJ., concur.

MAUS, J., disqualified.