**Cleda NEWTON and Paul R. Newton, Plaintiffs–Appellants**

v.

**Robert B. WIMSATT, Defendant–Respondent.**

**No. 16503.**

Missouri Court of Appeals, Southern District, Division One.

May 14, 1990.

Motion for Rehearing or Transfer Denied June 1, 1990.

Application to Transfer Denied July 31, 1990.

Scott B. Stinson, Mountain Grove, for plaintiffs-appellants.

J. Max Price, Salem, Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla (on appeal), Joseph W. Rigler, Salem, for defendant-respondent.

PARRISH, Judge.

Cleda and Paul R. Newton (hereafter referred to as "appellants") by their first amended petition brought an action to quiet title to certain real estate (Count I) and for unlawful detainer (Count II). That action

was brought against Robert B. Wimsatt (hereafter referred to as "respondent"). Respondent filed a counterclaim seeking, in equity, an order for the real estate to be conveyed to him, or, alternatively, a money judgment "for the reasonable value of the services provided, materials furnished, and funds expended by Defendant for Jeanette Thummel [sic]." Following trial and the filing of written findings of fact and conclusions of law, judgment was entered:

"[O]n Count I of Plaintiff's [sic] Petition quieting title in favor of the estate of Jeannette [sic] Teenie [sic] Hummel, deceased, such title now being vested subject to the terms and conditions of the Last Will and Testament of Jeannette [sic] Teenie [sic] Hummel passing title to Defendant Robert Wimsatt; that judgment is entered in favor of Defendant and against Plaintiffs on Count II of Plaintiff's [sic] Petition; and judgment is entered in favor of Plaintiffs and against Defendant on Defendant's Counterclaim. Costs taxed to Plaintiffs."

Appellants appeal from the judgment entered on Counts I and II of their first amended petition. No appeal was taken from the judgment entered on the counterclaim. The judgment as to Counts I and II is reversed and the case remanded.

Appellants claim ownership and right to possession of certain real estate. That claim is based upon a trust instrument and a warranty deed dated August 26, 1980, executed by Jeanette Tennie Hummel. Respondent claims ownership and right to possession of the same real estate. Respondent's claim is based upon the will of Jeanette Tennie Hummel executed in 1985. Jeanette died in 1988. Respondent challenges the validity of the trust instrument. If the trust instrument is valid, appellants prevail; if invalid, respondent prevails.

The real estate in question is a 20–acre parcel located in Texas County, Missouri. Prior to April 26, 1941, the property was owned by Ernest and Rosetta Vollmar. By warranty deed dated April 26, 1941, Ernest and Rosetta conveyed the 20–acre tract to Jeanette Snyder (Jeanette Tennie Hummel) and her then husband, Frank Snyder, as tenants by the entirety. Frank died, thereby leaving Jeanette, as the surviving tenant by the entirety, as sole owner of the real estate. Jeanette later married Pete Hummel. Pete was killed in an automobile accident.

In 1959, after Pete's death, Jeanette arranged with her sister, Laura Vollmar, to exchange deeds to the property in question for unexplained business purposes. Jeanette was to convey the real estate to Laura, who was unmarried, and Laura was to convey the property back to Jeanette. Jeanette, by quitclaim deed dated April 10, 1959, conveyed the property to Laura, but Laura failed to reconvey the property to Jeanette.

In 1980, Jeanette went to an attorney and had an instrument entitled "Revocable Real Estate Trust" and a warranty deed prepared. The trust instrument named Jeanette Tennie Hummel as grantor and as trustee. It stated that the grantor, "simultaneously with the execution of this agreement, has by deed conveyed to Jeanette Tennie Hummel, Trustee, under this declaration of trust," the real estate in question. Jeanette, as trustee, acknowledged and declared that she would hold the property in trust for the purposes set forth in the trust instrument, subject to its provisions. The trust instrument provided that the property would be held for the use and benefit of Jeanette as "First Beneficiary" and upon her death, prior to the termination of the trust, for the use and benefit of Cleda Newton as "Second Beneficiary." The trust agreement further provided that upon the death of Jeanette, unless the "Second Beneficiary" shall have predeceased, the successor trustee was directed to transfer immediately all right, title, and interest in the real estate subject to the trust and any income from that real estate that may be in the trust to the "Second Beneficiary" and terminate the trust. Cleda Newton was designated "Successor Trustee" in the event of the death or legal incapacity of Jeanette as trustee. Jeanette, as grantor, reserved the power and right to execute a deed of trust, mortgage, or place any other kind of lien upon the real estate in question, to lease and collect rents from that

property for her own use, and to pay any other income from the property to herself.

As grantor, Jeanette further reserved the right and power to revoke the trust in whole or in part during her lifetime or to amend it without any notice or without obtaining the consent of any beneficiary named in that agreement. The trust instrument provided that "the sale or other distribution of the whole or any part of the real estate described aforesaid, or any income that may be in the trust shall constitute as to such whole or part a revocation of this trust." Jeanette Tennie Hummel executed the trust as both grantor and as trustee. Both signatures were acknowledged before a notary public. On the same date, August 26, 1980, Jeanette Tennie Hummel, a single person, executed a warranty deed to the real estate in question to "Jeanette Tennie Hummel, as Trustee under a Declaration of Trust dated August 26, 1980." In June 1981, Jeanette mailed the executed trust agreement and the executed warranty deed to Cleda Newton. Jeanette had previously told Cleda about the transaction. The warranty deed and the trust instrument had not been recorded at the time Cleda received them.

Jeanette had talked about selling the real estate both before and after the date she executed the trust agreement and warranty deed conveying the property to herself as trustee. In 1981 a buyer was found and a sales contract signed; however, the sale was not consummated. Jeanette had forgotten about the 1959 quitclaim deed conveying the property to Laura. That deed was discovered in the course of a title examination. An action was brought seeking to quiet title to the property and to set aside the 1959 quitclaim deed to Laura. Judgment was entered quieting title to the real estate in question and declaring Jeanette Snyder Hummel to be the "owner in fee simple." The judgment further declared the April 10, 1959, deed whereby Jeanette had conveyed the real estate to Laura to be "vacated, set aside, annulled and declared of no force and effect."

Respondent first met Jeanette about 1960. Jeanette owned the property in question at that time. She lived and worked in St. Louis and would come to the Texas County property on weekends or on vacations. There was a house on the property that Jeanette's former husband, Frank, had begun building prior to his death.

Respondent moved into Jeanette's house on the property in Texas County about 1962. At that time, Jeanette was still living in St. Louis. She owned and operated several beauty shops there. She would come to Texas County on weekends and stay at the property with respondent. About 1966, Jeanette sold the beauty shops in St. Louis and returned to her property in Texas County. She lived there with respondent until the time of her death in 1988. Respondent and Jeanette did not marry. In 1985 Jeanette executed a will in which she left all her property to respondent.

Cleda Newton's father, Andy Vollmar, was Jeanette's brother. Cleda's parents died when she was small. Cleda was raised by her grandparents, Frank and Mollie Vollmar, who were Jeanette's parents. Cleda's grandfather died when she was four. She continued to live with her grandmother until her grandmother's death when Cleda was 15 years old. Cleda then went to live with Jeanette in St. Louis County. Cleda attended high school there and continued living with Jeanette for six years until she married Paul R. Newton. After her marriage, Cleda moved to Utah with her husband. Cleda described her relationship with Jeanette as very close, "She was like my mother." Following Cleda's marriage, Cleda maintained close contact with Jeanette. They corresponded or talked by telephone frequently. Cleda tried to visit Jeanette every year. When that was not possible, she visited at least every two years.

Following Jeanette's death, Cleda recorded the trust instrument and the warranty deed whereby Jeanette had conveyed the land to herself, as trustee, in the deed records of Texas County, Missouri. Acting as successor trustee, Cleda conveyed the

land in question to herself and her husband and terminated the trust.

In finding title to the real estate to be vested in respondent, the trial court, in its findings of fact and conclusions of law, found as follows:

> The Court finds that at the time of the attempted trust creation, Jeannette [sic] Teenie [sic] Hummel was not the owner of, and had no interest in, the land in question, such land having been deeded to Laura Volmer [sic] some years before. Since this property was the sole property with which the trust was funded, the trust failed due to a lack of res and the grant to the trust was not saved by the Doctrine of After Acquired Property. The property being later acquired, a present trust was not created and the trust fails.

That determination was based upon the trial court concluding that at the time Jeanette executed the trust instrument and the warranty deed conveying the real estate in question to herself, as trustee, Jeanette did not own that real estate. The trial court based that conclusion upon the fact that the real estate had previously been conveyed, in 1959, by Jeanette to Laura, and that the judgment in the quiet title action entered September 28, 1981, declaring title to be vested in Jeanette, had not yet been rendered when the trust instrument and warranty deed to Jeanette, as trustee, were executed.

Appellants allege that the trial court erred in determining title to the real estate in question to be vested in respondent in that the trial court misconstrued the legal effect of the 1981 quiet title action. Appellants contend that the 1981 judgment was not the means by which title to the real estate in question was vested in Jeanette, but that prior to August 20, 1980, when the trust was established, Jeanette had acquired title, notwithstanding the 1959 deed, by adverse possession. Appellants assert, alternatively, that "at the very least" Jeanette owned an equitable interest in the real estate on August 26, 1980, that was a sufficient interest with which to fund the trust. Appellants further contend, with re-spect to their claim for unlawful detainer, that they were the legal owners of the real estate on March 24, 1988, and thereby entitled to possession of the real estate and, therefore, the trial court erred by denying them judgment for possession of the real estate and by denying them judgment for the reasonable value of rent during respondent's term of possession of that real estate.

This court's review is governed by Rule 73.01(c). Due regard must be given to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In order for there to be a valid inter vivos trust, there must be a beneficiary, a trustee and a trust res. The trust res must be so sufficiently described or capable of identification that its title can pass to the trustee upon actual delivery of the trust corpus, or if the character of the property composing the corpus is such, there must be a legal assignment of the corpus to the trustee sufficient to convey present title. If the corpus is retained by the grantor, as trustee, that retention must be under circumstances which unequivocally disclose an intent to hold it for the use of another. *Potter v. Winter,* 280 S.W.2d 27, 33 (Mo.1955).

■ Jeanette's trust, on its face, appears to meet the requirements for a valid trust. Jeanette is trustee and a beneficiary. Cleda is the successor trustee and also a beneficiary (the "second beneficiary"). There is an identifiable res, the real estate in question. That res is described, with particularity, in the trust instrument. The corpus, the real estate, was conveyed to the trustee by warranty deed. The deed designates Jeanette, as grantee, "as Trustee under a Declaration of Trust dated August 26, 1980." The identification of Jeanette in this manner discloses an intent to hold the real estate in a capacity other than as an individual owner, i.e., for such use as is

specified by the trust instrument. The trust is not testamentary in nature. *Potter v. Winter, supra,* at 33–34; *Lorch v. Mercantile Trust Co., N.A.,* 651 S.W.2d 540, 542 (Mo.App.1983).

The trial court, however, determined that the res which is described in the trust instrument was not owned by Jeanette at the time the trust was established and that the trust failed. The trial court's conclusions of law state:

. . . . .

3. That a trust may not commence in the future. *Odom v. Langston* [355 Mo. 115], 195 S.W.2d 466 (Mo.1946).

4. That an interest which has not yet come into existence can not [sic] be held in trust. *Edgar v. Fitzpatrick,* 377 S.W.2d 314 (Mo. banc 1964).

. . . . .

The question presented is, did Jeanette own the real estate described in the trust instrument and the warranty deed dated August 26, 1980, at the time she executed those instruments? For the following reasons, this court concludes that Jeanette owned the real estate at that time.

Respondent testified that he lived at the property with Jeanette "as of 1962." For the first few years, he was there alone, except on weekends when she joined him. He testified as follows:

Q. Mr. Wimsatt, you moved down to Texas County, Missouri, and moved into Tinney's [sic] house I believe you indicated a year or two before she did?

A. Yes.

Q. And she came down on the weekends and stayed with you?

A. Yes.

Q. And that would have been mid sixties? Did you say you moved down here in 1964?

A. No.

Q. When did you—

A. '64.

Q. Excuse me?

A. '64.

Q. '64. So she moved down here in about what, '66?

A. Yeah.

Q. All right. And was she still operating her own business in St. Louis?

A. Yes.

Q. She had several beauty shops up there; didn't she?

A. Yes.

Q. She owned those beauty shops; didn't she?

A. Yes.

Q. And when she came down in 1966 to live full time in her own home, she sold those businesses before coming down here; didn't she?

A. The ones she had.

About 1966, Jeanette moved to the property and lived there, with respondent, full time. They continued living there together until Jeanette's death in 1988. During that time, they maintained and improved the property (including adding a front porch to the house) and insured the property. It was, in all respects, held out to be Jeanette's property.

Cleda's testimony was consistent with respondent's with respect to the use and occupancy of the property during Jeanette's lifetime. Cleda visited Jeanette at the property every year or two. She stayed at Jeanette's house on those occasions. She was aware that a porch was added on the house. She called Jeanette and corresponded with her at the Texas County address.

In the quiet title action and suit to set aside the 1959 quitclaim deed to Laura which Jeanette brought in 1981, Jeanette's petition alleged that she had maintained actual possession of the property openly, notoriously and under claim of ownership, paid taxes on the property and made valuable improvements thereon for more than 22 years. The Circuit Court of Texas County, on September 28, 1981, entered judgment in quiet title declaring Jeanette to be the owner of the property.

■ Generally, a voluntary conveyance, one without any valuable consideration, is valid between the parties. *Heath v. Heath,* 359 Mo. 590, 222 S.W.2d 778, 785 (1949); *Binnion v. Clark,* 359 Mo. 202, 221 S.W.2d 214, 217 (1949). Thus, on April 10,

1959, title to the real estate was conveyed to Laura. However, that title was subsequently extinguished by reason of Jeanette's adverse possession. § 516.010, RSMo 1959; *Crane v. Loy*, 436 S.W.2d 739, 743 (Mo.1968). The statutory period for establishing title by adverse possession is ten years. § 516.010, RSMo 1959.[1] Once title becomes vested by adverse possession, it remains so until passed by a grant or operation of law as other titles are transferred. Title acquired by adverse possession is as complete as title acquired by deed. Adverse possession for the statutory period establishes an indefeasible legal title in the possessor and title previously held by the record owner is divested. *Hamburg Realty Co. v. Walker*, 327 S.W.2d 155, 159 (Mo.1959); *DeShon v. St. Joseph Country Club*, 755 S.W.2d 265, 268 (Mo.App.1988). Title acquired by adverse possession is as complete as one acquired by deed. *Id.*

Jeanette reacquired title to the property in question after she had conveyed it to Laura in 1959. She did this by actual, hostile, i.e., under claim of right, open and notorious, exclusive and continuous possession for more than ten years. § 516.010, RSMo 1959; *Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App.1977). This occurred by operation of law, not by the 1981 judgment. The evidence clearly supports that Jeanette adversely possessed the real estate for more than ten years immediately preceding the execution of the August 26, 1980, trust instrument and warranty deed. At the time Jeanette executed the warranty deed conveying the real estate in question to herself as trustee, Jeanette owned the real estate in fee simple. Respondent's complaint that Jeanette "was not the record owner" of the real estate at that time is meaningless. So long as Jeanette owned the real estate, she had the legal ability to convey it by deed regardless of whether her title was "of record." *Hamburg Realty Co. v. Walker, supra.* Having determined that Jeanette held title to the real estate when the trust instrument and war-

ranty deed conveying the real estate, in trust, were executed, it is not necessary to consider appellants' alternative claim that Jeanette owned an equitable interest in the real estate on August 26, 1980.

Respondent further asserts that the trust was "an invalid testamentary disposition." Alternatively, respondent claims that, if valid, the trust was revoked by Jeanette prior to her death. These points are without merit.

■■■ In order for a trust to be created, some estate or interest must be conveyed to the trustee. When the instrument creating the trust is other than a will, i.e., when the trust is inter vivos rather than testamentary, legal title to corpus must be transferred to the trustee on the effective date of the trust. *Trautz v. Lemp*, 329 Mo. 580, 46 S.W.2d 135, 139 (banc 1932). In this case, Jeanette executed the necessary warranty deed to place the real estate in the inter vivos trust simultaneously with the execution of the trust instrument.

Respondent, in arguing that the trust was an attempted testamentary disposition, calls this court's attention to *Coles v. Belford*, 289 Mo. 97, 232 S.W. 728 (1921), in which an attempt was made to execute a deed to real estate with instructions to grantees to hide the deed and, upon the grantor's death, record the deed and take the property. *Coles* held that the grantor had no intent to deliver the deed in that the grantor did not give the deed to the grantee with the intent of passing title at that time, and, therefore, there was no delivery within the contemplation of the law. *Coles*, 232 S.W. at 731.

■■■ In this case, Jeanette intended to convey title by the warranty deed to herself as trustee. This is evidenced by the fact that she notified Cleda of the action she had taken, and later sent the trust instrument and the deed to Cleda. A deed is valid between the parties to the transaction regardless of whether it is recorded. § 442.400, RSMo 1978. The fact that Jean-

1. This has not been changed in subsequent revisions of Missouri statutes. The content of § 516.010 has remained the same since 1929.

ette desired the establishment of the trust to be a confidential matter between herself and Cleda and, to that effect, did not record the deed whereby the real estate was conveyed in trust, does not cause the trust to be an attempted testamentary disposition and, therefore, invalid. The decision to not record the deed was not made with fraudulent intent. Failure to record the deed does not affect the validity of the trust. *See Mason v. Mason*, 231 S.W. 971 (Mo.1921); and *Boone County National Bank v. Newkirk*, 144 Mo. 472, 46 S.W. 606, 607–08 (1898). The trust was not an invalid testamentary disposition.

■ Respondent's claim that Jeanette revoked the trust prior to her death is based upon an assertion that the trust did not specify a mode of revocation. Respondent claims that Jeanette did various acts during her lifetime which evidenced her intent to revoke the trust and since, according to respondent's interpretation, there was no prescribed method for revoking the trust, Jeanette's conduct constituted its revocation.

Respondent misconstrues the trust instrument in asserting that the trust did not specify a mode of revocation. To the contrary, paragraph 5 specifically provides that distribution of the real estate which is the corpus of the trust revokes the trust in whole or in part. The mode of revocation was for Jeanette to convey the real estate which was the trust corpus. After she established the trust and placed the real estate in trust by executing a warranty deed for that purpose, Jeanette did not again convey that real estate. She did not revoke the trust.

The trial court's finding that Jeanette was not the owner of the real estate in question and that, therefore, no title was conveyed to the trustee is erroneous. The finding that the trust failed due to a lack of res is not supported by substantial evidence. The judgment of the trial court entered in appellant's quiet title action, Count I of the amended petition, must be reversed and remanded with directions to enter judgment declaring the title to the real estate in question to be vested in Paul R. Newton and Cleda Newton, husband and wife.

Appellants' final point on appeal asserts that the trial court erred in holding that appellants were not entitled to relief on their count for unlawful detainer, and that appellants were, as a matter of law, legal owners of the property, and, as of March 24, 1988, entitled to possession of it. Appellants claim that, by virtue of the statutory relief allowed under the unlawful detainer statutes, §§ 534.040, et seq., they are entitled to a judgment for possession together with a money judgment for damages for the reasonable rental value of the real estate.

■ The docket sheet from the Circuit Court of Texas County indicates that this action originated as an action for unlawful detainer in the Associate Circuit Judge Division of that court. § 534.060, RSMo 1986. Following the filing of a request for jury trial (which was apparently withdrawn later), the presiding judge of the 25th Judicial Circuit (which includes Texas County) specially assigned the Associate Circuit Judge of Texas County to hear the case. § 478.240, RSMo 1986. The rules and procedures applicable before circuit judges applied. § 478.225.5, RSMo 1986. Thereafter, a first amended petition was filed by appellants assumedly for purposes of including a count for quiet title. Generally, an action for unlawful detainer is tried as a summary action in which other counts and counterclaims are not permitted. *McIlvain v. Kavorinos*, 358 Mo. 1153, 1157, 219 S.W.2d 349, 351 (banc 1949); *Lake in the Woods Apt. v. Carson*, 651 S.W.2d 556, 558 (Mo.App.1983); *Wilson v. Teale*, 88 S.W.2d 422, 423 (Mo.App.1935). The parties, however, voluntarily submitted a count for quiet title, as well as a counterclaim filed by respondent (which is not the subject of an appeal). The parties submitted the quiet title claim and respondent's counterclaim to the jurisdiction and judgment of the court by their appearances and by actively litigating all claims that were presented on their merits. Under the circumstances in this case, and without otherwise determining the procedural propriety,

or lack thereof, of including other actions for trial with an unlawful detainer action, the voluntary submission by the parties to the action to quiet title and the counterclaim was sufficient to permit the court to adjudicate those other actions. *Carter v. Guffey*, 548 S.W.2d 233, 235 (Mo.App.1977).

In deciding the action for unlawful detainer, the trial court concluded that since appellants did not hold title to the real estate, they were not entitled to have possession of it. Having found that the trial court erred in declaring title to be vested in respondent, it necessarily follows that the trial court's determination that respondent was entitled to possession of the real estate in question is in error. The trial court's determination, as it is applicable to the unlawful detainer action, that the evidence disclosed respondent to be the owner of the real estate is erroneous. That determination is not supported by substantial evidence. To the extent that the trial court determined that appellants were not entitled to possession of the real estate, in view of this court's determination that appellants own the property in question in fee simple, the failure to award possession of the real estate to appellants is an erroneous application of law.

In addition to seeking judgment for possession of the real estate, appellants seek a money judgment for the rental value of the property from July 19, 1988, when demand for possession was made pursuant to § 534.080, RSMo 1986. The evidence presented by appellants was that the rental value of the property was $150 per month. The trial court, however, did not reach the issue of damages since it found for respondent. It is appropriate, therefore, to remand this case with respect to the unlawful detainer action, Count II, to permit the trial court to assess damages. Giving due regard to the opportunity of the trial court to assess the credibility of the witnesses and recognizing the trial court's discretion in a nonjury case to accept or reject all or any part of testimony of any witness, Count II is reversed and remanded to permit the trial court to enter judgment awarding possession of the real estate to appellants and to consider appellants' claim for damages

for the fair rental value of the property from and after July 19, 1988, and make such award as the trial court may find to be supported by the evidence. Rule 73.-01(c)(2); *Alice v. Ronald*, 683 S.W.2d 307, 310 (Mo.App.1984); *Lillo v. Thee*, 676 S.W.2d 77, 80 (Mo.App.1984).

The case is reversed and remanded to the trial court for further action in accordance with this opinion.

CROW, P.J., and PREWITT, J., concur.