Rodney C. **HOEFER, as an individual, and as Successor Trustee of the Vineyard Dwain Hoefer Trust, Plaintiff/Respondent,**

v.

Kim **MUSSER, as an individual, and Kim Musser, Personal Representative of the Estate of Vineyard Dwain Hoefer, Respondent/Appellant.**

No. SD 32576.

Missouri Court of Appeals, Southern District, Division One.

Dec. 23, 2013.

---

Kyle L. Warren, of Poplar Bluff, MO, for Appellant.

Dale E. Nunnery, of Doniphan, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Kim Musser ("Musser"), as an individual, and as Personal Representative of the Estate of Vineyard Dwain Hoefer ("decedent"), appeals the "Judgment" of the trial court which quieted title to certain real estate in favor of Rodney C. Hoefer ("Hoefer")[1] as an individual and as Successor Trustee of the Vineyard Dwain Hoefer Trust (the "Trust"). Musser asserts one point of trial court error. We affirm the Judgment of the trial court.

## Factual and Procedural Background

This appeal involves an approximately 230–acre farm ("the farm") located in Ripley County, which was owned by decedent in 2008. In the spring of 2008, decedent met with Derrick Kirby ("Kirby"), an attorney practicing in Doniphan. Both Hoefer and Musser were present for part, or all of the meetings Kirby had with decedent. Decedent advised Kirby that he wanted to "create a dynasty trust for a farm he had in Ripley County" where a family member would be able to use and live on the farm "forever." Decedent wanted to create as many obstacles as possible so that the property would always be called the "Hoefer farm." Kirby advised decedent that he could not set up a trust that would last "forever," but that he could tie up the property for a couple of generations. Pursuant to decedent's request, Kirby prepared an irrevocable trust—"The Vineyard Dwain Hoefer Trust"—with the only asset contained within it to be the farm.

On May 8, 2008, decedent executed the Trust in Kirby's office and Kirby then notarized decedent's signature. In addition, Kirby prepared a warranty deed, which was executed by decedent and also notarized by Kirby, transferring the farm in question to the Trust. Following the execution of the Trust and the warranty deed, Kirby delivered the original documents to decedent, along with a "number of copies." The terms of the Trust provided that decedent would be the Trustee; Hoefer would be the Successor Trustee; and Hoefer's son, Matthew, would be Successor Trustee upon the death of Hoefer. The Trust contained the following provision:

---

1. Hoefer was a nephew of decedent, and Musser was a niece. Hoefer and Musser's fathers were brothers to decedent.

1. **Trust Property:** The Grantor has transferred and delivered to the Trustee all of the property described in the attached [S]chedule [A] which, together with all property hereafter transferred and delivered to the Trustee or Successor Trustee(s) shall constitute the trust estate and shall be held, administered and distributed as provided in this agreement.

(Bold in original).

The only asset listed on Schedule A was the legal description for the farm. In addition, the Trust also provided:

4. **Irrevocability:** The trust shall be irrevocable, and the Grantor hereby expressly acknowledges the he shall have no right or power, whether alone or in connection with others, and in whatever capacity, to alter, amend, revoke, or terminate the trust, or any of the terms of this agreement, in whole or in part.

5. **Powers of the Trustee:** The Trustee and Successor Trustee(s) of the trust ... shall have full power and authority to do any and all things necessary or proper to manage and control the property of said trust....

(A). The Trustee and Successor Trustee(s) of the trust ... shall have full power to manage the property, pay all the taxes and other lawful charges against it, and to make, execute and deliver any and all instruments to make effective the powers herein granted....

. . . .

(C). To sell, convey, exchange, assign, mortgage, pledge, transfer, make contracts with respect to, or any manner dispose of or encumber all or any part of the trust assets[,] ... EXCEPT Trustee shall not sell, convey or pledge any real property owned by the trust at any time for any reason.

. . . .

6. **Distribution:** [I]t is Grantor's wish that the real property described in Schedule A hereto remain in this Trust for as long as the lineal descendant's [sic] of Matthew Hoefer survive for the benefit of such descendants. Accordingly, Grantor wishes upon his death that the real property contained in this Trust be managed by [Hoefer] until his death or incapacitation; then by Matthew Hoefer until his death ·or incapacitation; then by Matthew Hoefer's living children, if any, in equal shares, until their death or incapacitation; then distributed to Matthew Hoefer's children's living children in equal shares or, if no living children, to Matthew Hoefer's lawful heirs . . . . .

Approximately three months after the execution of the Trust, Musser called Hoefer and indicated to him she had the original Trust, it had not been recorded, and advised Hoefer that he needed to record the Trust. On August 21, 2008, Hoefer recorded the Trust.

Following recording of the Trust, decedent moved from the farm house to a residential care facility. While decedent was residing in the care facility, the farm house burned down resulting in a total loss. All of decedent's personal effects in the house were destroyed. In October 2009, with decedent's permission, Hoefer built a house of his own on the farm.

Following the death of decedent in the spring of 2010, it was discovered that the warranty deed, executed in Kirby's office, had not been recorded. Musser, in her capacity as the personal representative of decedent's estate, instituted a probate action and listed the farm land as an asset of the estate.

On March 18, 2011, Hoefer filed a "Petition to Quiet Title" and asked the trial court to "quiet[ ] title to the real estate ... to [Hoefer] as Successor Trustee of the

[Trust]." On April 11, 2012, Hoefer filed a "First Amended Petition" petitioning to quiet title in Count I, and in the alternative in Count II, alleging "Unjust Enrichment" and asking the court to award him $250,000 for the improvements he made to the farm; i.e. construction of the house. On August 29, 2012, a bench trial was held.

Hoefer testified that he currently lived on the farm and in addition to the house he built, there was also a "trailer house" and three "domed barn building[s]." He stated decedent had only lived on the farm three or four years prior to his setting up the Trust as he lived out of state up until that time. Hoefer testified that his "whole life" he had worked on the farm with his dad taking care of the cattle and farm while decedent lived out of state, and that he was "[p]retty much raised on it[.]" Hoefer testified that decedent told him he wanted Hoefer to have the farm and to pass it on "from generation to generation," that he wanted it in a trust, and did not want it sold.

Hoefer stated that one day decedent called him and told him, "I want to give you my farm," and asked Hoefer to meet him at Kirby's office. Hoefer and Musser both sat in on the discussion between decedent and Kirby regarding setting up a trust. On May 8, 2008, the day decedent was to sign the Trust, he called Hoefer and asked him to be present and again stated he wanted Hoefer to have the farm. Before the Trust was signed, Kirby advised Hoefer and Musser that the Trust would tie up the land for generations to come, that Hoefer would have to pay the taxes on it, and money could not be borrowed against it. Kirby also advised that upon Hoefer's death, use of the farm would be passed to Hoefer's son Matthew. After the original documents were given to decedent, following signature, Hoefer testified that upon exiting Kirby's office, decedent asked Hoefer "to give him a dollar that way he could tell that he sold the property to me so he wouldn't be lying[ ]" and Hoefer gave decedent a dollar. Decedent also told Hoefer that he would have to pay taxes on the farm but that decedent would pay taxes on the house since he was still living there.

In October 2009, Hoefer consulted with decedent and informed him that he would like to build a house on the farm property and would like to live there. Decedent replied, " 'Well, it's yours, I gave it to you, do with it what you want[.]" After discussing the matter with Kirby, Hoefer began building a house[2] on the farm property and moved in the new house in February 2010. While he was constructing the house, Hoefer talked to decedent about the building of the house and testified that decedent knew the house was being built and it was being done with decedent's permission. A couple of months after Hoefer moved into the house, decedent died.

Hoefer testified the last time he saw the original warranty deed[3] signed by decedent, it was in decedent's possession. He

---

**2.** Hoefer did not use the farm land as collateral to build the house. Instead, he used an "equi" line of credit he had obtained on his home he lived in at the time.

**3.** A copy of the warranty deed was tendered to the trial court as an exhibit, but Musser's attorney objected based on the best evidence rule. After securing additional testimony from Hoefer, Hoefer's attorney again attempted to enter into evidence a copy of the warranty deed. Musser's attorney renewed his objection and the trial court indicated it would "show that you offered it into evidence and there is an objection and I will take it under advisement for the time being." A copy of the warranty deed was not deposited with this Court. There is no indication in the record that the trial court ever made an official ruling on this matter.

never saw the warranty deed again and it was not with the Trust Musser gave him to record. He assumed the original warranty deed was destroyed in the fire.

Hoefer testified the first he knew there was a problem with the warranty deed was about a week after decedent's death. He received a call from Kirby asking him to come to his office and bring any "papers" he had concerning the Trust. Hoefer stated the only papers he had was a copy of the Trust. Kirby then advised him that the warranty deed had never been recorded. Musser had also contacted him to see if he had the original warranty deed. Thereafter, Musser opened the estate and listed the farm land as part of the estate's assets.

Hoefer saw decedent at least two or three times a week before he became ill, and then two or three times a month up to approximately two years before decedent's death. Hoefer testified that decedent never indicated to him that he wanted to terminate the Trust or leave the farm to anyone else.

Kirby testified he met with decedent on "multiple occasions" and that Hoefer was with decedent on at least two occasions, and Musser was present on "at least part of all the visits." Kirby admitted the Trust would span at least three generations before being disbursed to any beneficiary; i.e. if "Matthew had children it would go to their living heirs, if he did not have children it went to his living heirs." Kirby went over the Trust with decedent and answered any questions decedent or Hoefer had. It was Kirby's recollection that the reason decedent picked Hoefer to be trustee was he did not have a good relationship with his own three children. He felt none of his children would keep and maintain the farm for future generations.

Kirby identified the copy of the warranty deed as being that which was prepared by his office and executed by decedent. Kirby testified he offered to record the Trust documents, including the warranty deed, but decedent said, " 'I'll just take them and take care of that myself.' " Kirby gave decedent an envelope containing the original Trust documents, as well as copies of the documents. He advised decedent to record the Trust first and then the warranty deed. Kirby also prepared a Will for decedent with Musser being the only beneficiary.

Peggy Wright, sister to decedent, testified that decedent told her he wanted the farm to go to Hoefer's father, then to Hoefer, and then to Matthew because they had always taken care of the farm in his absence. She discussed this with decedent on several occasions, the first time being when decedent lived out of state, and the last time was two months before his death. She testified that decedent never mentioned to her at any time that he wanted his son William to get the farm.

Musser testified she renewed her relationship with decedent when he moved back to Missouri in 2006. Musser stated she drove decedent pretty much wherever he needed to go and drove him to Kirby's office. She was present in Kirby's office when a power of attorney was prepared and she saw decedent execute it, but she left before the Trust documents were signed, including the warranty deed, because she had to go to decedent's home to find his glasses. By the time she returned to Kirby's office, all the Trust documents had been signed. She recalled Kirby giving an envelope to decedent containing the documents and Kirby instructing decedent on where the courthouse was to record the documents.

When Musser returned decedent to his home, she testified decedent gave her the

Trust, Will, and durable power of attorney to lock up in her safe. She admitted later giving the original Trust document to Hoefer for recording. She testified she never remembered seeing the warranty deed.

Musser admitted that Hoefer did call decedent about building a house on the farm property. However, she testified decedent believed that the house was being built so he and Musser could live there, and that Hoefer would not live there. Musser testified that prior to executing the Trust documents, decedent had asked her if she wanted the farm, but she told him she did not "because that would just be rude, you know, he [was] still alive." Musser testified that prior to executing the Trust, decedent also made out a Will and warranty deed leaving the farm to her and her husband, but they refused to accept it.

Musser further testified that upon decedent's death, she filed decedent's Will with the Ripley County Probate Court. The Will purported to leave to Musser, " 'All the rest, residue and remainder of [decedent's] estate, be it real, personal or mixed, and wheresoever situate[.]' " Musser was appointed as Personal Representative of decedent's estate. She stated the farm land was listed as an asset of the estate with a value of $300,000 and without it, the estate had a value of only $11,000.[4]

Musser testified shortly after decedent's death, Kirby notified her the warranty deed had never been recorded. Musser later testified it was not her intention to deprive Hoefer of the house he built on the farm and that he should retain the house and several acres.

On cross-examination, Musser admitted that decedent wanted to "protect his land"

and that is why he executed the Trust. She admitted that although she was not present when the warranty deed was signed, that it existed and was signed at the time decedent executed the Trust in Kirby's office. She was aware that decedent kept his important papers in a "filing box" that she purchased for him and he kept it "by his recliner." Musser stated she had cause to go through the filing box looking for the durable power of attorney, but did not see the warranty deed in the box with decedent's other papers. As far as she knew, that filing box had been destroyed in the fire.

Richard Musser, husband to Kim Musser, testified he got to know decedent when he moved back to Missouri. Richard on occasion would drive decedent back and forth from his home to theirs for meals and gatherings. Richard recalled that on one occasion, just prior to his death, he asked decedent, " 'You really want to give your land to Kim, don't you,' " and decedent responded, " 'Yes, I do.' "

William Hoefer, decedent's son, testified that he and his siblings had a "tumultuous and rocky relationship" with decedent. William stated he was not speaking at all to decedent a year or two prior to his death and any information concerning decedent was passed to him through Musser. William testified that prior to the two-year period he was not speaking to decedent, decedent called him and wanted William and his wife to have the farm and they even met with decedent at Kirby's office. Decedent executed a "last will and testament" on September 15, 2006, leaving the farm to William. Decedent wanted to deed the property to William and his wife,

---

4. There was one disputed claim against the estate in the amount of $25,265.50 for cattle feed and mending of fences. There was also another claim in the amount of $30,277.68 from the State of Missouri for healthcare expense. Musser testified that without the farm land, the estate would not be able to pay these claims.

but William told decedent he did not want decedent to do so as William and his wife did not want to take on the "liability" of the farm at that time. William stated that even though an unsigned warranty deed existed, he was not contending the farm had actually been deeded to him.

The trial court took the matter under advisement, including Musser's objection to Hoefer's Exhibit 2, purporting to be a copy of the original unrecorded warranty deed. On January 10, 2013, the trial court entered a Judgment quieting title to the farm land in favor of Hoefer, and finding Hoefer as "Successor Trustee of the Vineyard Dwain Hoefer Trust is entitled to relief as requested in Count I of [the] First Amended Petition." No findings of fact or conclusions of law were made by the trial court; neither Hoefer nor Musser requested any findings. This appeal followed.

Musser's sole point alleges trial court error in ruling in favor of Hoefer because the farm "was never properly transferred to the … Trust in that the deed delivering title to the Trust was not accepted by the Grantee, nor recorded in the Office of the Recorder of Deeds of Ripley County, Missouri."[5] The issue for our determination is whether the trial court's Judgment quieting title to the farm in favor of Hoefer was supported by substantial evidence, was not against the weight of the evidence, and was not based on an erroneous declaration or application of the law.

## Standard of Review

In a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The trial court's judgment is presumed valid, [and] the burden is on the appellant to demonstrate its incorrectness[.]" *Harness v. Wallace,* 167 S.W.3d 288, 289 (Mo.App. S.D.2005). A judgment should be set aside as "against the weight of the evidence" only with caution and only when the reviewing court has a firm belief that the judgment is wrong. *Murphy,* 536 S.W.2d at 32; *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.S.D.2010). In applying the standard of review, this Court defers to the trial court's credibility determinations. *Houston,* 317 S.W.3d at 186. "That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony." *Watson v. Moore,* 8 S.W.3d 909, 912 (Mo.App.S.D.2000) (citing *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988)).

## Analysis

It is undisputed that decedent owned the farm in issue, and he wanted the farm to remain in his family for generations to come. It is also undisputed that decedent simultaneously executed the Trust and a warranty deed conveying the farm to the Trust. The issues in this appeal revolve around what happened at the time the Trust and warranty deed were executed,

---

5. Musser's sole point is in violation of Rule 84.04 in that it contains multiple claims of error in one point. *In re C.A.M.,* 282 S.W.3d 398, 405 n. 5 (Mo.App.S.D.2009) (noting "[m]ultiple claims of error in one point relied on renders the point multifarious and therefore a violation of Rule 84.04."). Because Hoefer addressed the point directly, we chose to review Musser's point of error *ex gratia. See Robert T. McLean Irrevocable Trust u/a/d March 31, 1999 ex rel. McLean v. Ponder,* 418 S.W.3d 482, 489–90, No. SD31767, 2013 WL 5761058, at *5 (Mo.App.S.D. Oct. 24, 2013).

All rule references are to Missouri Court Rules (2013).

*and* following execution of those documents.

Musser argues Hoefer failed to provide evidence of delivery and acceptance of the warranty deed, so the farm was never properly transferred to the Trust. Musser further argues the evidence she presented of decedent's actions following execution of the Trust and warranty deed indicate decedent did not wish to tie up the farm in the Trust. Musser supports her position by arguing decedent kept the warranty deed in his possession and failed to record the deed even though instructed by his attorney on how to record it. Musser also points to her testimony and that from decedent's son William that decedent offered the farm to each of them prior to executing the Trust and warranty deed.

█ Musser is correct that a deed must be delivered for it to operate as a transfer of the ownership of land, as delivery of the deed "gives the instrument force and effect." *Rhodes v. Hunt,* 913 S.W.2d 894, 900 (Mo.App.S.D.1995). "Delivery signifies that all dominion and control over the deed is passed from the grantor to the grantee, or to someone for him, with the intention of transferring the present ownership of land, or an interest or estate therein." *Id.*

█ Whether a deed was delivered is a mixed question of law and fact. *Meadows v. Brich,* 606 S.W.2d 258, 260 (Mo. App.S.D.1980). The burden of proving a deed was not delivered is upon the party seeking to invalidate the deed because of the alleged non-delivery.[6] *Rhodes,* 913 S.W.2d at 900. In this case, the burden of proving non-delivery is upon Musser. *See Cartmill v. Evans,* 498 S.W.2d 541, 545 (Mo.1973).

█ While recording a deed does create a presumption of delivery, recording does not, by itself, operate as delivery of the deed. *Greuter v. Wetekamp,* 172 S.W.3d 822, 825 (Mo.App.S.D.2005). In fact, the Supreme Court of Missouri has determined "[d]elivery of a deed may be made so as to pass title even though the grantor retains possession of the deed." *O'Mohundro v. Mattingly,* 353 S.W.2d 786, 792 (Mo.1962); *see also Pollock v. Brown,* 569 S.W.2d 724, 734 (Mo.1978) (holding there may be delivery even though the deed remains in the custody of the grantor).[7] The controlling factor in determining delivery of a deed is the intent of the parties, specifically the grantor. *Greuter,* 172 S.W.3d at 825. The parties' intent "may be manifested by words or acts or both." *Meadows,* 606 S.W.2d at 260.

**6.** Musser, citing *Meadows,* 606 S.W.2d at 260, argues Hoefer bears the burden to prove delivery. However, the logic of this holding in *Meadows* does not apply here. *Meadows* provides there is a presumption of non-delivery if the deed is in grantor's possession at his death and not recorded. *Id.* In *Meadows,* a deed naming five children as grantees was in father's (grantor's) possession at time of his death and not then recorded. The court found the burden of proof was on the children to prove delivery of the deed. *Id.* Here, decedent was the Trustee of the Trust. The Trust document notes the "Grantor [Vineyard Dwain Hoefer] delivered to the Trustee [Vineyard Dwain Hoefer] all of the property described in the attached [S]schedule [A]." The property described in the attached Schedule A is the farm in issue in this case. Therefore, under the terms of the Trust, decedent was both the grantor, individually, and grantee, as the Trustee of the Trust. The facts of this case, and decedent as both grantor and grantee in different capacities, make the application of *Meadows'* presumption of non-delivery inapplicable.

**7.** This Court has also held that "[i]t is not necessary, to effectuate delivery, that the deed actually be handed over to the grantee or to another person for the grantee[,] ... [and] [t]here may be a delivery notwithstanding the deed remains in the custody of the grantor." *Meadows,* 606 S.W.2d at 260. It is all a question of intent of the parties.

"A deed is valid between the parties to the transaction regardless of whether it is recorded." *Newton v. Wimsatt*, 791 S.W.2d 823, 829 (Mo.App.S.D. 1990). The failure to record a deed conveying title to property to a trust does not affect the validity of a trust. *Id.* at 827 (noting that in order for there to be a valid trust, there must be a beneficiary, a trustee, and a trust res).

Unlike many other cases where delivery and acceptance is an issue, the trial court in this case did not have the benefit of the grantor's testimony as to his intent regarding transfer of the property as he was deceased at the time of trial. However, the trial court did hear testimony from Hoefer, Musser, Kirby, decedent's sister, and two other family members as to decedent's words and actions regarding the Trust and farm. The testimony from the various witnesses was conflicting, and under our standard of review, conflicts in evidence are for the trial court to resolve; "[t]he trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness." *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980) (internal citations omitted).

Following a review of the evidence in this case, pursuant to our standard of review, we find there was evidence decedent intended to convey the farm by warranty deed to the Trust.[8] Decedent only lived on the farm three or four years prior to setting up the Trust. For many years, Hoefer and his father worked on the farm taking care of the cattle and farm while decedent lived out of state. The undisputed evidence was that decedent wanted the farm to remain in his family. In fact, while their testimony at times was conflicting, both Musser and Hoefer agreed decedent wanted the farm to remain in his family and did not want it sold. This was patently clear by decedent's offer to give the farm to both Musser and his son William, prior to executing the Trust. However, they *both declined* the farm. As a result, decedent proceeded to consult with an attorney to set up a trust with as many obstacles as possible to ensure the farm would stay in his family. Even Musser agreed that decedent wanted to "protect his land" and that is why he executed the Trust after she would not agree to take the farm.

At trial, Kirby testified he met with decedent on "multiple occasions" concerning the farm, and the only purpose in creating the Trust was to place the farm into the Trust. Kirby set up an irrevocable trust whereby neither decedent nor any of the successor trustees could change it.[9] The method used to convey the farm to the Trust here is similar to the approach in *Newton*, 791 S.W.2d at 823. In *Newton*, the owner of property executed a trust instrument simultaneously with execution of a warranty deed purporting to transfer the property to herself as trustee. Like decedent, the owner did not record the deed. *Id.* Despite the failure to record the deed, the court found effective delivery because the evidence showed that following execution of the deed, grantor notified the secondary beneficiary of the action she had taken and the grantor later sent the

---

8. Musser does not dispute that decedent was both the grantor, individually, and grantee, as the trustee of the Trust.

9. The Trust specifically provided:
   4. **Irrevocability:** The trust shall be irrevocable, and the Grantor hereby expressly

acknowledges the he shall have no right or power, whether alone or in connection with others, and in whatever capacity, to alter, amend, revoke, or terminate the trust, or any of the terms of this agreement, in whole or in part.

trust instrument and deed to the second beneficiary. *Id.* at 829–30; *see also Spielvogel v. City of Kansas City*, 302 S.W.3d 108 (Mo.App.W.D.2009).

Here, Hoefer is Successor Trustee of the Trust. Like *Newton,* there is no dispute that decedent executed the Trust simultaneously with execution of a warranty deed transferring the farm to himself as Trustee of the Trust. Also like *Newton,* decedent clearly notified Hoefer he was transferring the farm to the Trust. Hoefer was present at Kirby's office when the Trust was executed, and privy to decedent's conversations with Kirby about the Trust.[10] Hoefer testified that during the meeting, Kirby advised decedent, Hoefer, and Musser that the Trust would tie up the farm for generations to come, Hoefer would have to pay the taxes on it, and money could not be borrowed against it. Kirby also advised that upon Hoefer's death, it would be passed to Hoefer's son Matthew.

Under *Newton,* we find substantial evidence in the record for the trial court to find effective delivery and acceptance of the warranty deed.

We further find evidence of events *after* the Trust was executed amounts to substantial evidence supporting a finding that decedent intended the farm be transferred to the Trust. As previously noted, the intent of the parties, specifically the grantor, is controlling and intent may be manifest by words, actions, or both. *Greuter,* 172 S.W.3d at 825; *Meadows,* 606 S.W.2d at 260. While the testimony as to the events after the Trust was executed is

conflicting, we give deference to the trial court's resolution of the conflicting testimony. *Long v. Lincoln,* 528 S.W.2d 512, 513 (Mo.App.Spfld.D.1975).

Musser argues after executing the Trust, decedent changed his mind regarding placing the farm in the Trust and decedent was "at best, fickle as to his wishes as to whom the property would go after his death." However, there is no evidence that decedent offered the farm to Musser, his son, or any other family member *after* executing the Trust.[11] To the extent that Musser's evidence conflicts with that of Hoefer, "[c]onflicts in evidence were for the trial court to resolve, and the facts must be taken in accordance with the result reached by the trial court. The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness." *Trenton,* 599 S.W.2d at 483 (internal citations omitted). Here, the trial court was free to reject Musser's evidence and resolve the conflicting testimony in favor of Hoefer.

The intent of decedent was a question before the trial court, and we must take the facts in accordance with the result reached by the trial court. The evidence of decedent's actions and words in both establishing the Trust, executing the Trust, and actions and words following execution of the Trust, is sufficient to support the trial court's findings. The whole purpose of the Trust was to tie up the farm in the Trust for use by decedent's family. Decedent had previously offered the farm to both Musser and his son, and

---

10. Musser also attended the meeting at Kirby's office, but testified she was not present when the Trust documents were signed, including the warranty deed, because she had to leave to go to decedent's home to find his glasses. However, she could not find them and by the time she returned to Kirby's office, all the Trust documents had been signed.

11. Musser cites decedent's offers to give the farm to both Musser and decedent's son. However, both of these offers were made *years prior* to the execution of the Trust, and the trial court was free to reject this evidence.

they both declined, so he proceeded to execute the Trust.

Furthermore, Hoefer proceeded to build a house on the farm following execution of the Trust with decedent's knowledge and permission.[12] Musser claims decedent stated the house was for Musser and decedent. Again, we defer to the trial court upon whether to believe Musser or Hoefer's testimony because of "its superior opportunity to observe the conduct and demeanor of the parties and their witnesses and to weigh, evaluate and assess their testimony." *Long*, 528 S.W.2d at 513 (internal quotations omitted).[13]

Musser further argues that because decedent did not record the warranty deed, an inference may be drawn that decedent changed his mind about placing the farm in the Trust. We disagree. Kirby testified he offered to record the Trust documents, including the warranty deed, but decedent said, " 'I'll just take them and take care of that myself.' "[14] Kirby advised decedent to record the Trust first and then the warranty deed.

Although the warranty deed was not recorded, the Trust was recorded on August 21, 2008, by Hoefer, at Musser's instructions. The Trust specifically notes that decedent "transferred and delivered to the Trustee all of the property described in the attached [S]chedule [A], which . . . shall constitute the trust estate and shall be held, administered and distributed as provided in this agreement." The Schedule A attached to the Trust, and recorded with the Trust, contains a legal description of the farm in issue. Following the recording of the Trust, decedent then moved from the farm to a residential care facility.

That Hoefer moved to the farm and built a house there with decedent's knowledge and consent after decedent moved away, further suggests, in context, decedent's intent via the Trust that Hoefer possess and use the farm.

Therefore we find there was evidence, which was believed by the trial court based on its Judgment, that the intent to effect delivery and acceptance was present. The Judgment is supported by substantial evidence, is not against the weight of the evidence, and did not erroneously declare or apply the law. Therefore, Musser's sole point is denied, and the trial court's Judgment is affirmed.

NANCY STEFFEN RAHMEYER, P.J., and DANIEL E. SCOTT, J., concur.

---

12. Hoefer testified that when he informed decedent in October 2009 that he would like to build a house on the farm property, decedent replied, " 'Well, it's yours, I gave it to you, do with it what you want[.]' " Hoefer testified the house was built with decedent's permission and he talked to decedent about the house as it was being built. At no time did decedent tell Hoefer that he wanted to terminate the Trust or leave the farm to someone else. The fact that Hoefer moved into the house while decedent was alive further strengthens Hoefer's testimony.

13. We also note there was no evidence that decedent attempted to stop construction on the house, was involved in the construction of the house, moved in the house, or that Musser moved in the house.

14. Kirby identified at trial an exhibit purporting to be a copy of the warranty deed as being that which was prepared by his office and executed by decedent.