John T. DONNELLY,
Plaintiff/Respondent,

v.

Patricia K. DONNELLY,
Defendant/Appellant,

v.

Carole DONNELLY, Defendant/Third
Party Defendant/Respondent.

No. 70516.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1997.

brother, John Donnelly. Carole Donnelly, John's wife, is also a defendant and a third party defendant to Patricia's counterclaim. The property had belonged to John and Patricia's mother, Kathleen. The case was tried to the court which issued findings of fact and a conclusion of law. We remand for further findings by the court. The home was purchased by Kathleen and her husband, Edward, in 1991. Edward died in January 1994, at which time Kathleen became sole owner. Kathleen had a heart condition and one lung surgically removed prior to Edward's death but was in reasonably good health. After Edward's death Kathleen asked her daughter to move in. Kathleen was hospitalized in June 1994, and was diagnosed with a terminal reoccurrence of lung cancer. Her health began to deteriorate rapidly.

In July, three deeds to the property were executed. The first, on July 2, deeded the house to Patricia. The second, on July 9, deeded the house to John. The third, on July 14, was a beneficiary deed which conveyed the property to the children equally to be effective upon Kathleen's death. Kathleen died on July 21.

John's amended petition was in two counts. The first sought to establish a misplaced or lost deed ( the July 9 deed) or in the alternative sought to partition the property. Patricia filed an amended counterclaim in four counts. Count I sought to establish a lost or destroyed deed and to quiet title in her. Count II sought an accounting from John during his possession of the property. Count III sought damages for conversion of "certain documents" belonging to Patricia by John and his wife. Count IV sought damages for tortious interference with a business relationship. During trial John dismissed Count I of his amended petition and sought only partition based on the July 14 deed. After the conclusion of the trial Patricia dismissed Count IV of her counterclaim. The trial court's judgment addressed only Count II of John's amended petition. Counts II and III of the counterclaim are still pending. A judgment is final and appealable only when it disposes of all the issues for all parties in

---

Lester H. Goldman, St. Ann, for appellant.

Mitchell Johnson, Harold G. Johnson, St. Ann, for respondent.

GERALD M. SMITH, Judge.

Defendant, Patricia Donnelly, appeals from a judgment granting partition of real property in St. Louis County. Plaintiff is her

the case and leaves nothing for future determination, *McKean v. St. Louis County,* 936 S.W.2d 184 (Mo.App.1996)[1–4], or where the trial court certifies the judgment final for purposes of appeal pursuant to Rule 74.01(b). However, in partition suits, the interlocutory judgment ordering partition may be appealed prior to the partition sale and the final order of distribution if the judgment determines the rights of the parties. Section 512.020 RSMo 1994; *First National Bank of Carrollton v. Eucalyptus,* 721 S.W.2d 165 (Mo.App. 1986). The court's judgment here determined the rights of the parties and its interlocutory order is appealable.

The evidence at trial was sharply contradictory. There was no dispute that Kathleen executed a quit claim deed to Patricia on July 2. There was evidence that prior to execution of that deed Kathleen had knowledge that such a deed would immediately vest title to the property in her daughter and that Kathleen would have no further interest in the property. There was evidence that she intended an immediate transfer at the time she signed the deed. Yet there was evidence from other witnesses that Kathleen did not know what a quit claim deed was. There was evidence from which a trier of fact could at least infer that Kathleen intended the conveyance to have effect only upon her death and did not at the time of the deed intend to make an *inter vivos* gift to her daughter.

The evidence was clear that on July 2, at the time the deed was executed, Kathleen was in a very weak condition, lying in a recliner in her home and on oxygen. Present at that time were five people: Sister Edith Vogel (a notary public), Sister Michael White (Kathleen's sister, a nun), Tracy Price ( Kathleen's niece), Patricia, and Kathleen. Kathleen signed four documents at that time: the quit claim deed, a will, a gift affidavit to be used to transfer Kathleen's automobile to Patricia, and a general power of attorney. Patricia filled out the information on each. There was evidence that Kathleen seemed to know what she was doing. There was conflicting evidence as to the extent to which Patricia explained the nature of the documents which Kathleen was signing. No witness testified that anyone explained to Kathleen at that time that the quit claim deed would immediately divest her of title to the property and vest it in her daughter.

Patricia testified that after her mother signed the documents and they had been notarized, her mother said "Here. You need to take care of these. This is yours now." Patricia then took the documents and "put them in my drawer". This was a drawer in Kathleen's bedroom which Patricia testified was set aside for her belongings and papers. Yet there was evidence that the drawer contained items belonging to Kathleen, including her wallet, and that an inventory after Kathleen's death revealed nothing in the drawer belonging to Patricia.

Some additional family members came to the house on July 2 believing Kathleen was dying. Later in the day Kathleen's condition improved. A dispute developed between Kathleen and Patricia and Patricia left the house, taking with her only night clothes. Kathleen then asked Sister White to bring to Kathleen the documents which had been earlier executed to be destroyed. Sister White retrieved the documents but suggested that they not be destroyed while Kathleen was still angry. Kathleen agreed and asked Sister White to hide the documents. Patricia returned a few days later to pick up Kathleen's automobile and her documents. Kathleen instructed Sister White to give Patricia the keys to the car and the gift affidavit but not the other documents.

There was a family meeting on July 6, which we do not find it necessary to describe. On July 9, Kathleen executed the quit claim deed giving the house to John. At the same time she executed a will and power of attorney. John prepared those documents using the July 2 documents as a guide. The will provided that the house was to be sold and that each sibling would receive a one-half share, and one sibling could buy out the other's share. Kathleen then destroyed the July 2 documents before the assembled witnesses. The July 9 documents were then taken to an attorney to determine their legal efficacy. Upon the advice of the attorney, Kathleen executed the beneficiary deed on July 14.

The elements of a valid *inter vivos* gift are (1) the present intention of the owner to make a gift; (2) delivery of the property by the donor to the donee; and (3) acceptance by donee whose ownership takes effect immediately and absolutely. *Duvall v. Henke,* 749 S.W.2d 714 (Mo.App.1988)[1–3]. The party claiming that an *inter vivos* gift exists has the burden of proving the elements by clear, cogent, and convincing evidence. *Id.* The trier of fact determines whether a valid gift *inter vivos* exists. *Id.* It is also well established, that once a gift is made the donor may not revoke the gift upon a change of mind. *Meyer v. Koehring,* 129 Mo. 15, 31 S.W. 449 (1895); *Franklin v. Moss,* 101 S.W.2d 711 (Mo.1937)[1–4]; *LeMehaute v. LeMehaute,* 585 S.W.2d 276 (Mo. App.1979)[21,22]. The main issue in this case is whether Kathleen intended to transfer immediate title to Patricia, or whether she intended the transfer to become effective only upon her death. If she intended the latter, the deed could be subsequently revoked. Interwoven with that issue is whether delivery and acceptance occurred here, where the documents remained in the donor's home. Both issues are particularly fact intensive and both are largely decisive of the basic issues of intent, delivery and acceptance.

In its findings of fact the trial court did not address the issue of Kathleen's knowledge of the effect of a quit claim deed. It made a finding that at the time of the transaction "Kathleen was extremely weak … but was clear headed and able to understand what was happening and what she was doing." It also found that "After Patricia prepared the Quit Claim Deed she handed it to her mother and asked her mother if this is what she wants, that she (Patricia) is to get the house. Her mother said yes." Finding 25 dealt with the issue of delivery and acceptance. It stated: "Patricia testified that she asked her mother what she wanted Pat to do with the documents and her mother answered that 'They're yours, put them with your things.' Patricia then picked up each of the documents and put them in a drawer in a dresser in her mother's bedroom which was a drawer that Patricia was assigned to use for her own papers." We are unable to tell whether this finding is a recitation of Patricia's testimony, or whether it is a finding of fact accepting as true Patricia's contention that the drawer was hers.

The court made one "conclusion of law". It was: "The intent and will of the deceased (Kathleen) is to transfer the title and ownership of said real estate, (previously described) to her son John and daughter Patricia, equally." That is not a conclusion of law, but a finding of fact. It does not specify when she had the intent described, before the July 2 documents were executed or after. If the former, then the "conclusion" would support the judgment. If the latter, then the intent described is irrelevant to the issues before the court.

A judgment cannot stand when it is based on findings of fact which are antagonistic, inconsistent, or contradictory as to material matters, or when it is based on conclusions of law which are at variance with the findings of fact. *Myers v. Nickelson,* 664 S.W.2d 251 (Mo.App.1984)[1–2]. We would add to that list ambiguous findings of fact. The resolution of this litigation depends on the finder of fact determining what Kathleen believed was conveyed by the quit claim deed and when.

Delivery of a deed is not rendered ineffectual by the placing of it by grantee in a safety deposit box, or other place of safekeeping, to which both the grantor and grantee have access. *Galloway v. Galloway,* 169 S.W.2d 883 (Mo.1943)[10–15]; *Lape v. Oberman,* 284 S.W.2d 538 (Mo.1955)[2]. Similarly, it is not necessary, in order to effectuate delivery, that the deed actually be handed over to the grantee or to another person for the grantee. *Meadows v. Brich,* 606 S.W.2d 258 (Mo.App.1980)[4–6]. There may be delivery notwithstanding the deed remains in the custody of the grantor, because the key question is the intention of both parties, which may be manifested by words or acts or both. *Id.*

We are not in a position to resolve these factual disputes as they depend greatly on the credibility placed on the testimony of the various witnesses and the degree to

which all or portions of some testimony is found to be non-credible. Because the factual findings are ambiguous, contradictory, and inconsistent the judgment cannot stand and we must remand for clarification of the factual findings. We also note that the trial court did not reach the issue of undue influence. Again the evidence regarding that contention is in sharp dispute and judicial economy would suggest that the court make factual findings on that issue.

Judgment vacated and cause remanded for further proceedings in accordance with this opinion.

CRANE, P.J., and PUDLOWSKI, J., concur.